# HARRY L. JUMP

## *vs.*

# ROBERT H. BARNES.

*Libel—Qualified Privilege—Report by Railroad Agent—Evidence—Question for Jury.*

A communication by a railroad agent to a superior official, in answer to an inquiry from the latter, in reference to a claim against the railroad company, is one of qualified privilege, involving legal liability only if actual malice is shown.

pp. 105-110

In an action against a railroad station agent for having written, in answer to inquiries from a superior official, that grain shipped by plaintiff was in bad condition when shipped, that plaintiff had tried in vain to sell it, and that the weight of the shipment as given by plaintiff was merely guessed at and was incorrect, *held* that, in view of a letter written by defendant in regard to another shipment of grain made by plaintiff about the same time, and containing statements derogatory to plaintiff's honesty, based on hearsay, and evidence that defendant had tried to buy this very grain, that he was himself in the grain business, and that the grain was not in the condition represented by defendant, it was error to take the case from the jury.

pp. 110, 111

While it is a question for the court whether a communication, if made in good faith, without malice and in the belief that it was true, is privileged, if there be evidence tending to show lack of good faith and actual malice, the plaintiff has the right to have the jury pass on the facts.

p. 112

Since, in an action for libel, evidence of the truth of the publication cannot be offered under the general issue plea, it was improper for defendant's counsel, after all the special pleas had been withdrawn, to allude in his opening statement to such a defense.

p. 112

*Decided June 28th, 1921.*

Appeal from the Circuit Court for Queen Anne's County (HOPPER and WICKES, JJ.).

Action by Harry L. Jump against Robert H. Barnes. From a judgment for defendant, plaintiff appeals. Reversed.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*T. Alan Goldsborough,* for the appellant.

*Edwin H. Brown,* with whom was *J. C. Mullikin* on the brief, for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a judgment rendered in favor of the defendant (appellee) for costs in an action for libel brought by the appellant against him. The alleged libel was in a letter dated October 22, 1918, written by the appellee to Mr. C. C. Glessner. The declaration contained two counts— the first being based on the first part of the letter and the second on the remaining part of it. A demurrer was sustained and leave was granted to amend the first count, which, the docket entries state, was done by an interlineation of the statement, "and received by the said C. C. Glessner and by said Baltimore & Ohio Railroad Co." A demurrer to the amended declaration was overruled and, after issue was joined on a general issue plea, the case was tried before a jury. What is called the "amended declaration" is set out in the record, and only contains the first count of the original declaration as amended, and the second was apparently intended to be omitted. As the demurrer to the amended declaration was overruled and the interlineation could do no possible harm to the plaintiff, it is unnecessary to refer further to the demurrer.

The defendant first filed the general issue plea and what we understand was intended to be a plea of justification of

the truth of the matter alleged, and one of privilege, on which issues were joined "short," but they were withdrawn and the general issue plea refiled, on which issue was joined before the jury was sworn. A number of exceptions to rulings on the admissibility of evidence were noted, but as they were not brought up for review by bills of exception, the only question before us is as to the granting of the defendant's third prayer—his first and second having been rejected.

The plaintiff (appellant) is a farmer and deals in grain, living at Queen Anne, Queen Anne's County, in this State. The defendant (appellee) was, at the time of the transactions mentioned in this case, agent at Queen Anne for the Philadelphia, Baltimore & Washington Railroad Company of the Pennsylvania System. About March 12th and March 14th, 1918, the appellant shipped two carloads of corn from Queen Anne to the Baltimore Pearl Hominy Company in Baltimore. It was shipped by the Philadelphia, Baltimore & Washington Railroad Company from Queen Anne, but was delivered to the Baltimore & Ohio Railroad Company at Baltimore. The car to which the letter set out in the declaration had reference was N. H. No. 79194, and contained 1,125 bushels of corn, and the other one was C. R. I. & P. No. 37367, containing 1,100 bushels of corn. The Baltimore Pearl Hominy Company claimed that the corn was in bad condition when it reached Baltimore, and filed claims against the Baltimore and Ohio Railroad Company for both carloads. C. C. Glessner was auditor of freight claims of the Baltimore & Ohio Railroad Company, and Joseph H. Eisenrich was a claim investigator in his department. Both railroads were under the control of the Federal Government at the time, and Messrs. Barnes, Glessner and Eisenrich were really in the employ of the United States Railroad Administration. In the course of his investigation of the claims, Mr. Eisenrich wrote, in the name of his superior, C. C. Glessner, a letter dated October 9th, 1918, addressed to "Agent P. R. R. Co., Queen Anne, Md.," "Supt. Freight Transportation,

P. R. R. Co., Philadelphia," and others, for information concerning car No. 79194, which in part was as follows:

"Agent, Queen Anne, will furnish billing from your station, mechanical inspection record of car prior to loading and after loading was completed, grade, quality and condition, also the amount of moisture contained in this corn at time of loading, advise what the shippers at Queen Anne were receiving for this grade of corn from outside parties on the date the bill of lading was issued; was it old or new crop corn and how long, of the seals, general condition of the corn crop at your section, marks, numbers and impressions on the seals, on side and end doors. Do you consider the shipper's weight of 1125 bushels very reliable and correct?"

A reply came addressed to C. C. Glessner, dated October 22nd, 1918, from the appellee, as follows:

"Dear Sir: This car corn, I understand, was rotten before it was loaded in car here, as it had been stored away in a tight place without much ventilation and was wet when stored, and when hauled out to car was in a mouldy condition and wet, rotten; shipper tried to sell it to farmers here at $1.00 per bushel and could not sell it at any price on account of being so badly damaged. I would consider it rotten, rejected corn from all accounts. I would not consider the weight of 1125 bushels correct as he only weighed a few bags from each wagon load and balance of weight guessed at or estimated, also I have an idea that it was weighed when stored in bags and not weighed again when loaded in car and after being in bags some time it will dry out and fall short in weight.

"Yours respet.,

"R. H. Barnes, Agent."

That is the letter which is set out in the declaration, and in the first count it is alleged that the statement made in the letter from the beginning to "I would consider it rotten re-

jected corn from all accounts," inclusive, "is false and malicious; that it was made for the purpose of defeating the plaintiff's aforesaid claim and for the purpose of injuring the plaintiff in his business as a grain dealer, and that the defendant meant by making the aforesaid statement that the plaintiff had made a fraudulent claim against the Baltimore & Ohio Railroad Co." In the second count the rest of the letter was alleged to be false and malicious, etc.

The third prayer of defendant, which was granted, was as follows: "The defendant prays the court to instruct the jury that the evidence produced in this case by the plaintiff shows that the letter incorporated in the Narr. and offered in evidence, and alleged to be libellous, was written by an employee of the U. S. R. R. Admin. in the discharge of his duty in answer to a letter from a superior employee of said R. R. Admin. about a carload of corn shipped from the railroad station where said employee was the agent of said U. S. R. R. Adm. and is a privileged communication, and in order to maintain this action the plaintiff must show that the privilege was abused; and that the defendant was actuated by express malice towards the plaintiff in writing the said letter; that there is no evidence in this case of any abuse of the defendant's privilege and no evidence that he was actuated by express malice in writing said letter; the court, therefore, further instructs the jury that there is no legally sufficient evidence in this case to entitle the plaintiff to recover and their verdict must be for the defendant. * * *"

The appellant concedes the case to be one of qualified privilege, but insists that it should have been submitted to the jury. We do not understand the appellee to contend that the communication was absolutely privileged, but he in effect concedes it to have been one of qualified privilege. Under our decisions it would seem undoubtedly to be of the latter class, as may be seen by some of them, which we will refer to at some length. In *Garrett* v. *Dickerson,* 19 Md. 418, the remarks relied on in support of the action for slander were

made at a meeting of the board of directors of the Balti-
more and Ohio Railroad Company, of which Mr. Garrett was
then a member, in reference to a former employee of the com-
pany, who had been discharged. The court, on page 450,
said: "The question, whether words sufficient in themselves
to raise the legal presumption of malice are privileged, is one
of law, determinable from the circumstances leading to and
attending their utterance. It is to be observed that words
ascertained to be privileged as matter of law still involve the
element of fact of good faith in speaking them, and that in
general, evidence of any act or circumstance tending to show
the want of good faith may be offered to remove the protec-
tion of privilege, and show the existence of malice." It was
further there said that "the jury may look to the words them-
selves, in connection with other facts and circumstances than
those from which the privilege is deduced, in passing upon
the question of express malice." It was held that the case
was properly submitted to the jury.

In *Maurice* v. *Worden,* 54 Md. 233, the appellant, who
had been a teacher of French at the United States Ñaval
Academy at Annapolis, placed his resignation in the hands
of the appellee, who was the superintendent of the academy,
to be forwarded to the Secretary of the Navy. The resigna-
tion was forwarded by the appellee, with his endorsement
thereon of reasons why it should be accepted. The appel-
lant sued the appellee for an alleged libel based upon that en-
dorsement. Amongst the regulations for the government of
all persons attached to the naval service of the United States
was one, of which this court said: "The regulation referred
to plainly required the appellee to state his opinion in writ-
ing, by endorsement or otherwise, in regard to the propriety
of it (the resignation) being accepted. This he did by mak-
ing the endorsement complained of. It was therefore made
in the line of his duty and one of the questions presented by
the second exception is whether or not his endorsement is a
privileged communication, and if so, to what extent?" JUDGE

Brent, in speaking for the Court, said: "There are two classes of privileged communications which form exceptions to the general law of libel. The one is absolutely privileged and cannot be sued upon, while the other may be the cause of action, and the suit upon it maintained on proof of malice. "He then mentioned those enumerated in *Starkie on Libel and Slander* as being absolutely privileged, though false and malicious and made without reasonable or probable cause, which we need not repeat, as neither of them applies to this case, and said: "Beyond this enumeration we are not prepared to go." He referred amongst other cases to that of *White* v. *Nicholls,* 3 How. (U. S.) 267, where "the Supreme Court refused to extend the doctrine of absolute privilege to cases where the author of the alleged slander acted in the *bona fide* discharge of a public or private duty, legal or moral." Judge Brent concluded his opinion on the question by saying: "We are satisfied that the communication in question does not fall within the class of communications which are absolutely privileged. We hold it, however, to be privileged, to the extent that the occasion of making it rebuts the presumption of malice and throws upon the plaintiff the *onus* of proving that it was not made from duty, but from actual malice and without reasonable and probable cause." The Court referred to some evidence in relation to what transpired between the defendant and the plaintiff in their interviews about the time of the resignation, and said: "The onus is thrown upon the plaintiff of establishing actual malice and want of probable cause, as stated in a previous part of our opinion, and the evidence has some slight tendency in that direction. It should not, therefore, be excluded from the jury."

In *Beeler* v. *Jackson,* 64 Md. 589, the appellee, who had been discharged from the employ of the Baltimore and Ohio Railroad Company by the appellant, who was the general agent of the company at Locust Point, applied to him to know the reason for his discharge. He replied: "Stealing

fruit, fish, nuts, and breaking up car doors and taking them home"; also "you have been seen eating nuts and herrings." It was said by the Court: "It was a proper and legitimate occasion for him to speak freely and without reserve. In order to relieve him from all embarrassment, the law shields him from any injurious consequences on account of his answer; provided it is given in truth, honesty and fairness. Within these limits it is a privileged communication. If, however, he uses the occasion as an opportunity to wreak his ill-will upon the questioner, to abuse and villify him, and to injure him in the estimation of his neighbors, he will be held to a just responsibility." It was also said that "When the words alleged to be slanderous are embraced in the class of privileged communications, * * * the plaintiff is bound to prove the existence of malice as the real motive of the defendant's language. But it is not necessary to prove that there was personal spite or ill-will towards the plaintiff." It was held that that case was properly taken from the jury, as there was no fact or circumstance which tended to show a want of good faith on the part of the defendant in acting on a report of a detective who had examined into the facts and reported to him, or that, in answering the inquiry addressed to him by the plaintiff, he exceeded the requirements of the occasion.

In *Maulsby* v. *Reifsnider,* 69 Md. 143, although the general rule that words spoken by counsel in a judicial proceeding, if made in reference to the subject matter of inquiry, are not actionable, although they may be false and malicious, was fully recognized, yet it was held, on page 162, that "if counsel in the trial of a cause maliciously slanders a party, or witness or any other person in regard to a matter that has no reference or relation to, or connection with, the case before the court, he is and ought to be answerable in an action by the party injured." In *Fresh* v. *Cutter,* 73 Md. 87, the appellee had at one time been in the employ of the appellant, and had entered or was about to enter the services of one Al-

len. The appellant of his own accord, and without solicitation or inquiry on the part of Allen, spoke the alleged defamatory words, although it was also held that it made no difference whether the information was given voluntarily, "if the party had acted honestly, fairly and without malice." The Court said: "Malice is the foundation of the action, and in ordinary cases is implied from the slander; but there may be justification from the occasion, and when this appears an exception to the general rule arises, and the words must be proved to be malicious as well as false. *Beeler* v. *Jackson*, 64 Md. 593. This justification from the occasion arises, in the class of cases now being considered, when a communication is 'made *bona fide* upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, if made to a party having a corresponding interest or duty,' although the communication 'contained criminating matter which, without the privilege, would be slanderous and actionable; and this, though the duty be not a legal one, but only a moral or social duty of imperfect obligation,'"—citing *Harrison* v. *Bush*, 5 Ellis & Bl. 344. Judge McSherry also said, "It is a question for the court whether the statement, if made in good faith and without malice, is thus privileged. But the plaintiff has the right notwithstanding the privileged character of the communication to go° to the jury, if there be evidence tending to show actual malice, as when the words unreasonably impute crime, or the occasion of their utterance is such as to indicate, by its unnecessary publicity or otherwise, a purpose wrongfully to defame the plaintiff. Or malice may be established by showing that the publication contained matter not relevant to the occasion. *Townshend, Slander and Libel*, sec. 245. Expressions in excess of what the occasion warrants do not *per se* take away the privilege, but such excess may be evidence of malice."

In *Barington* v. *Robinson*, 124 Md. 85, and *Symington* v. *Ham*, 132 Md. 701, Judge Constable delivered the opinions

and cited many authorities, stating the conclusions reached clearly and succinctly. The latter case was not reported for reasons not necessary to be mentioned, but in the list of unreported cases a summary of the points decided is made. We might cite many other authorities, but we have already referred to so many—more than were perhaps necessary—that we will not do so.

It only remains to apply the principles of them to the facts of this case. On October 7th, 1918, C. C. Glessner wrote to the same parties mentioned above in reference to car C. R. I. & P. 37367, and on October 11th the appellee replied to that letter. It seems that the appellant did not know of these two letters until during the trial of this case, and the suit was based on the one of October 22nd, referred to above, of which, in some unexplained way, the appellant heard and obtained a copy. A letter from Mr. Glessner to the Baltimore Pearl Hominy Company, dated December 5th, 1918, was also in evidence. It said:

"We are just in receipt of advice from the agent at Queen Anne, Md., to the effect that this corn was rotten when loaded into car, and had been stored away in a tight place without any ventilation, and was wet when stored and when hauled out from the car.

"We understand that shipper tried to sell it to farmers here at $1.00 per bushel, but could not sell it at any price on account of its condition.

"Under these circumstances, we expect you to withdraw the claim. If you desire to review our investigation, you may do so when you again call at the office."

The latter letter referred to the corn which is the basis of this suit, and the claim was withdrawn. These letters were admissible in evidence as reflecting upon the question of malice and good faith of the appellee, etc. He said in the letter of October 11th that he did not see the corn after it was loaded, as the car was closed up, but that "another party in town told me he saw the corn and it was rotten when

loaded it in, or a good portion of it was; he says it was about as bad a lot of corn as he ever saw loaded to be sent to the market for sale; also about the same time I understand he sent about 350 or 360 bushels out to his farm and tried or offered it for sale at $1.00 per bushel. I have been told it was not fit for anything but chickens to eat." He then re-ieferred to weights and added a postscript, "The shipper is very unreliable." He was not asked about that, and he only claimed to have the information as to that corn through "an-other party in town." If he wanted to be fair and justify his own conduct, he ought at least to have explained who it was, and produce him as a witness, if he could, instead of asking to have the case taken from the jury at the conclusion of the plaintiff's evidence. The testimony produced by the plaintiff showed that the appellee had tried to buy the most of the very corn which was in the car referred to in the letter of October 22, and when Mr. Downes, the party who sold it to the plaintiff, was asked why he sold it to him instead of to Mr. Barnes, he replied, "Well, Jump give me more money." The appellant testified that he bought 975 bushels that went in that car from Mr. Downes and his tenant, Mr. Seager, and 150 bushels from Mr. Clark—making the 1,125 bushels. The evidence produced shows that the corn was not in the condition that the appellee represented it to be in his letter, and further that the appellee, in addition to being agent for the railroad, bought and sold grain himself. When the evidence, including the letters, is considered, it seems to us clear that the appellee's third prayer, which took the case from the jury, should not have been granted.

Under the authorities the case should have been submitted to the jury. While it is a question for the court whether a communication, if made in good faith, without malice and in the belief that it was true, is privileged, if there be evi-dence tending to show the lack of good faith and actual mal-ice, the plaintiff has the right to have the jury pass on the facts. As said by LORD CAMPBELL, C. J., in *Dickson* v. *Earl*

of *Wilton*, 1 Fos. & Fin., 419, quoted with approval in *Maurice* v. *Worden*: Whether or not the occasion gives the privilege is a question of law for the Judges; but whether the party fairly and properly conducted himself in the exercise of it is a question for the jury." "If the jury should find from the evidence that the accuser did not believe the accusation he had made was true, there would be a fact from which they could infer malice." *Bavington* v. *Robinson*, 124 Md. 91. As this case was taken from the jury at the conclusion of the plaintiff's evidence, we only have that before us, but, as the record now stands, there was ample evidence to go to the jury on the questions suggested above, and we will not say more in reference to it.

We have not thought it necessary to discuss what the record states was said by counsel for the defendant in his opening statement, in reference to the truth of the publication, as it is not altogether clear whether it was intended to be a part of the bill of exceptions. As evidence of the truth of the publication sued on could not be offered under the general issue plea (1 *Poe, Pl. & Pr.*, sec. 663), and what was intended to be a special plea (although clearly defective) had been withdrawn, it was, of course, not proper to mention it in the opening statement; but owing to the uncertainty as to whether what was stated was intended to be certified to by the court, and as on a new trial it can be avoided, we will not now determine whether such a statement of counsel could be used to show malice. Nor will we pass on the effect, if any, of such a plea, which was withdrawn before the jury was impanelled. It was not offered in evidence, and, having been withdrawn, was not a part of the pleadings, and could not have been taken to the jury room, if the case had gone to the jury.

It follows from what we have said that the judgment must be reversed.

*Judgment reversed and a new trial awarded.*
*the appellee to pay the costs.*