# MOLLIE DECKELMAN *v.* LEWIS W. LAKE.

*Libel—Privileged Communication—Evidence of Malice.*

Malice, which plaintiff, in an action based on a privileged communication, has the burden of proving, means a wrongful act, done intentionally, or with evil intent, without just cause or excuse, or as a result of ill will, it not necessarily implying spite against any individual, but rather, in many instances, merely a wanton disposition grossly negligent of the rights of others.                                            p. 536

While it is a question for the court whether a communication, made in good faith, without malice and in a belief in its truth, is privileged, if there be evidence tending to show lack of good faith and actual malice, the plaintiff is entitled to have the jury pass on the facts.                             p. 539

In an action against an attorney for libel, in writing to the representative of a non-resident creditor of plaintiff, stating that a number of suits had been instituted against plaintiff, and suggesting the necessity of bankruptcy proceedings to protect plaintiff's creditors against executions on judgments that might be recovered in these suits, *held* that the evidence as to the circumstances under which the letter was written, taken in connection with defendant's plea of justification, and his action, at the close of plaintiff's case, without any explanation of his conduct, in seeking to have the case taken from the jury, was sufficient to take the case to the jury on the question of malice.

p. 539

That a written contract of sale was admitted in evidence, as being the best evidence of the fact of sale and the terms thereof, did not injure plaintiff, if such facts had already been given in evidence.                                        p. 539

*Decided January 13th, 1926.*

Appeal from the Court of Common Pleas of Baltimore City (SYMINGTON, J.).

Action by Mollie Deckelman against Lewis W. Lake. From a judgment for defendant, plaintiff appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Wm. Pinkney Whyte, Jr.,* for the appellant.

*John L. V. Murphy,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

This appeal is from a judgment for the defendant in a suit for libel brought by the appellant, a merchant of Baltimore City, against the appellee, an attorney at law of that city. The alleged libel was in the following letter, signed and sent by the defendant to a merchant of the City of New York, a creditor of the plaintiff:

"November 21, 1922.

"Mr. Leon I. Wachtel,
  "530 Broadway,
    "New York City, N. Y.
          "*In Re*: Mrs. Mollie Deckelman, trading
                as New York Waist Store, 2227
                E. Monument Street, Baltimore,
                Md.

"Dear Sir:

"I am advised that you are a creditor of Mrs. Deckelman, and therefore wish to bring to your attention the existing conditions as reported to me by some of the largest local creditors of Mrs. Deckelman.

"A number of suits have been instituted against her recently and are now pending, and it is my belief that as soon as judgment is taken in these cases immediate execution will be ordered.

"In view of the fact that Mrs. Deckelman is absolutely insolvent, this will mean that these creditors will obtain a preference for their claims, and if it becomes necessary for the sheriff to seize her assets, which I am advised amount to approximately $1,500, all of the other creditors will be shut out.

"I estimate the amount of her liabilities to be approximately $3,000.

"I do not feel that one creditor should anticipate more than another and this can only be obviated by filing a petition in bankruptcy. In this way, I believe that the creditors would all get a fair return on their claims.

"Will you advise me by return mail the amount of your claim and whether you will authorize me to use it in bankruptcy as a petitioning creditor?

"It will be necessary for me to take immediate action in this matter if you wish to head off the sheriff in his execution.

"The compensation for my services is being taken care of, therefore, you will not be called on in this respect to advance any money, or pay any compensation to me.

"Very truly yours,
"(Signed) Lewis W. Lake.
"LWL:D."

To the declaration, in which the letter was sent out in full, the defendant filed a general issue plea and a plea of justification.

In the trial of the case three exceptions were taken to the rulings of the court, two upon the evidence and one on the prayers.

At the conclusion of the plaintiff's evidence the court, at the request of the defendant, directed a verdict for him on the ground that the plaintiff had offered no evidence legally sufficient to entitle her to recover.

The court below, as we gather from a statement made by him, found in the record, held that the letter was a qualified privileged communication, with the burden upon the plaintiff to show malice on the part of the defendant, and finding there was no evidence of malice legally sufficient to go to the jury, the case was withdrawn from its consideration.

The privilege in this case is certainly not more than a qualified privilege, as held by the court below, nor do we

understand that anything more is claimed for it by the appellee.

It is said in 17 *R. C. L.* 341, that "a communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matters which, without this privilege, would be actionable. * * * A publication loses its character as privileged, and is actionable, on proof of actual malice, or, at least such gross disregard of the rights of the person injured as is equivalent to malice in fact. In the case of a qualified privileged communication the occasion on which it was made rebuts the inference *prima facie* arising from a statement prejudicial to the * * * plaintiff, and puts the burden on him to prove that there was malice in fact." *Maurice v. Worden,* 54 Md. 233; *Beeler v. Jackson,* 64 Md. 593; *Fresh v. Cutter,* 73 Md. 87; *Brinsfield v. Howeth,* 107 Md. 278; *Jump v. Barnes,* 139 Md. 101.

Malice, as here used, "in its legal sense means a wrongful act, done intentionally, or with evil intent, without just cause or excuse, or as a result of ill will. Malice does not necessarily imply spite against any individual, but rather, in many instances, merely a wanton disposition grossly negligent of the rights of others." 17 *R. C. L.* 321.

The appellant, who had been in business in Leonardtown, Maryland, for a number of years, moved to Baltimore, where she, in 1922 was engaged in the "ladies ready-to-wear cloaks, suits and dress business" at 2227 E. Monument Street. At times she purchased goods from the Juliet Cloak Company of New York. In one of its shipments to her she was not satisfied with the goods and would not receive them, but after being told by the company that they would be sold at auction if not received by her, she sought counsel and was advised by him to adjust the matter if she could, which she did through her attorney, co-operating with the appellant, the company's attorney, whereby a small reduction was made from the amount originally charged for the goods, and it was

arranged that the amount so agreed upon should be paid in monthly installments, which is shown to have been paid as follows: One hundred dollars on August 29th, 1922, seventy-five dollars on September 29th, 1922, seventy-five dollars on October 30th, 1922; and the balance, seventy dollars and thirty cents, which was due on November 29th, on the 9th of December, 1922. It seems, however, that suit had been brought upon this claim, about the time of the adjustment, by the company, through the appellee as its attorney, and such suit was pending during the period covered by said payments. The appellant, desiring to discontinue business in Baltimore City and to return with her husband, an invalid, to Leonardtown, where she intended again to resume business, on the 20th day of September, 1922, entered into an agreement with Rebecca Keisner and S. Harry Keisner, who were represented by S. S. Levin and Israel Gomborov, their attorneys, to sell unto them her "entire business including all fixtures and the balance of her lease on the store and garage," for the sum of twenty-nine hundred dollars, of which amount she was paid five hundred dollars in cash, and the balance was to be paid "on the date of settlement, Tuesday, September 26th, 1922," at which time and upon payment of the balance of the purchase money the transfer of the property was to be made "in accordance with the sales in bulk act." As the sale of the stock of goods and merchandise came within the provisions of said act, the purchasers were furnished a list "containing the names and addresses of all the creditors of said vendor, together with the amount of indebtedness due or owing by said vendor to each of such creditors." The aggregate indebtedness to the creditors, as shown by the list, amounted to thirteen hundred eighty-nine dollars and fifty-eight cents, not including a claim of the United Cloak and Suit Company of one hundred ten dollars and seventy-five cents, the correctness of which was disputed by the plaintiff, and upon which suit was then pending in the Superior Court of Baltimore City. For some reason, not shown by the record, the balance of said purchase money was never paid and the property was never transferred to the purchaser.

The appellee, when called upon by the appellant to explain why he had written the letter to Wachtel, said "I sent the letter, but Gomborov and Levin are in back of this." The appellant's husband, who heard the conversation between his wife and the appellee, in giving his version of it, said that the appellee, in reply to his wife's question as to why he wrote the letter, stated, "I will be honest with you," and "he picked up a piece of paper off of his desk and he says, 'You recognize this'?" It was the list of the creditors of the appellant already mentioned, and the appellee then said "Well, I have got it here. Here is where I got that information. I have been tricked in by Mr. Samuel Levin and Gomborov."

Mr. Louis Schapiro testified that Mrs. Deckelman, the appellant, showed him a letter written to one of her New York creditors (Wachtel) by the appellee, and that he spoke to the latter regarding it, and asked him on what information the letter was written, and he replied, "Mr. Levin came to him stating that he represented a certain party on a case against Mrs. Deckelman (the appellant) and on certain information that Mr. Levin gave to him he wrote that letter. Now, what that information was I do not know." And, when asked if that was the only reason given he said, "That is the only reason that I can recall."

It was on the 21st day of November, 1922, after three of the installments had been paid on the claim of the Juliet Cloak Company, the only claim against the appellant, so far as the record discloses, in which the appellee was in anywise interested, and only eight days before the last installment of seventy dollars and thirty cents would become due, that the appellee wrote the letter complained of, having before him at such time the statement containing the names of her creditors and showing the aggregate amount owing to them at the time it was furnished, only a short while before, to be fifteen hundred dollars and thirty-three cents, including the disputed claim of one hundred ten dollars and seventy-five cents, and likewise showing the amount agreed to be paid by Mrs. Keisner and her husband for the stock of

goods, etc., to be twenty-nine hundred dollars. In this letter the appellee said that the appellant was "absolutely insolvent" and that it was necessary to institute the bankruptcy proceedings, suggested by him, "to head off the sheriff in his execution" upon the judgments yet to be recovered in the suits then pending against the appellant.

While it is a question for the court whether a communication, if made in good faith, without malice and in the belief that it was true, is privileged, if there be evidence tending to show the lack of good faith and actual malice, the plaintiff has the right to have the jury pass on the facts. *Jump v. Barnes, supra.*

The evidence offered by the plaintiff, including that above stated, reflects, we think, upon the question of the good faith of the appellee in the use of the language prejudicial to the appellant found in the letter, and was, in our opinion, sufficient to take the case to the jury upon the question of malice. Especially is this true when considered in connection with the plea of justification interposed by the defendant, in which he, in effect, says, "I wrote the letter and the alleged libelous words found therein are true." The position of the defendant in this case is not unlike that of the defendant in *Jump v. Barnes, supra.* In that case the language complained of was likewise found in a letter written by the defendant. In it he said, "Another party in town told me he saw the corn and it was rotten when loaded in it, or a good portion of it was; he says it was about as bad a lot of corn as he ever saw loaded to be sent to the market for sale." Judge Boyd, speaking for the Court, said, "If he (the defendant) wanted to be fair and justify his own conduct, he ought at least to have explained who it was, and produce him as a witness, if he could, instead of asking to have the case taken from the jury at the conclusion of the plaintiff's evidence." So in this case, the appellee, we think, after the introduction of the plaintiff's evidence, should have explained his conduct in respect to the charges made against the appellant, instead of asking to have the

case taken from the jury at the conclusion of the evidence of the plaintiff.

We now come to the exceptions taken to the evidence. The first is to the admission of the written contract or agreement of sale between the appellant and the Keisners, for the sale of her stock of goods, etc. The appellant, the plaintiff below, had offered evidence as to such sale and its terms and conditions, when upon cross-examination of the plaintiff it was ascertained by defendant's counsel that the agreement of sale was in writing. Upon being asked for the contract, if she had it, the witness gave it to defendant's counsel. It was then offered by him and admitted in evidence against the objection of the plaintiff. If the fact of the sale and the terms thereof were proper to be introduced in evidence, then the written agreement was the best evidence of those facts, but in any event, as such facts had already been given in evidence, there was certainly no injury done the plaintiff in its admission.

It is hard to determine to what the second exception applies. The plaintiff was being interrogated as to the five hundred dollars paid to her in cash under said contract, when she was asked, "Your position was then that you wanted to turn over the property to them and get the twenty-four hundred dollars and they wanted to get back the five; is that the situation." Answer, "They did not ask for the five." The counsel for the plaintiff then said, "I object to going into the demerits and merits of that suit. It don't make any difference whether she won it or lost it." Then followed a discussion between the court and the respective counsel, which resulted in the court over-ruling the objection, and the exception was taken to its ruling thereon. If the objection was to the answer, we can discover no possible injury that was done the plaintiff by the answer.

Because of the errors committed by the court below in its rulings upon the prayers, the judgment will be reversed.

> *Judgment reversed and a new trial awarded, the appellee to pay the costs.*