745 A.2d 1134

**John R. DARVISH**

v.

**Shahriar GOHARI.**

**No. 1585, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Feb. 11, 2000.

Paul M. Smith (Elizabeth A. Cavanagh and Jenner & Block, on the brief), Washington, DC, for appellee.

Argued before MURPHY, C.J., and MOYLAN and WENNER, JJ.

MURPHY, Chief Judge.

In the Circuit Court for Montgomery County, a jury found that appellant John R. Darvish had made false and defamatory statements about appellee Shariar Gohari. The evidence was sufficient to support the jury's verdict, but appellant contends that he is entitled to a new trial at which he can (1) assert a "qualified privilege" defense, and (2) introduce evidence that his statements about appellee were true.[1] For the reasons that follow, we agree with those contentions and remand for further proceedings.

## Factual Background

Appellant is the owner and chief executive officer of Darcars automotive franchise group. In January 1987, he hired appellee as a comptroller trainee at the Darcars Toyota dealership. In 1988, appellee became vice president of Darcars Toyota, and in 1992 was named senior vice president of Darcars automotive group. In August of 1996, appellee quit his job with Darcars.

In November of 1996, appellee entered into an agreement with James Kline for the purchase of Kline's Toyota franchise.

---

1. Appellant's brief asks us to answer the following questions:

 I. Did the Circuit Court err in ruling that appellant's communications with CATD representatives regarding appellee's fitness to own and operate a Toyota dealership were not subject to a qualified privilege, when the communications arose from appellant's lengthy employment relationship with appellee, were solicited by the CATD representatives with appellee's consent, and were statements which CATD was justifiably entitled to receive?

 II. Did the Circuit Court err in ruling that appellant had adopted by silence statements attributed to him by CATD representatives, when the court did not find that appellant heard and understood the statements and a reasonable person in appellant's circumstances would not have been expected to deny the statements?

 III. Did the Circuit Court err in ruling that appellant could not introduce evidence to prove the truth of allegedly defamatory statements the publication of which he denied, when the rules of procedure specifically allow appellant to plead alternative and inconsistent defenses?

Appellee needed Toyota's approval in order to own/operate that franchise, and he submitted a franchise application to Central Atlantic Toyota Distributors, Inc. ("CATD").[2] On December 2, appellee met with Dennis Clements and Roy Arminger of CATD. Appellee authorized CATD to "inquire, through outside sources, about [his] character, general reputation and credit history" and to "obtain and share information from and with any of its affiliated entities."

The jurors were entitled to accept the following testimony. On December 10, 1996, Clements met with appellant and inquired about appellee's qualifications to own the Toyota franchise. Following that meeting, Clements drafted a memorandum stating that appellant had told him, among other things, that (1) appellee "did not have the experience or background to be considered qualified to operate a dealership;" (2) "Mr. Gohari had suddenly left the DARCARS organization several months ago in an unprofessional manner and with no notice;" and (3) "there was a questionable financial manipulation by Mr. Gohari to inflate his compensation."

When Clements told Arminger about that December 10 meeting, Arminger prepared a memorandum summarizing Clement's recollections of appellant's comments about appellee. On December 12, 1996, Arminger called appellant and read to him several "bullets" from the Arminger memorandum. The bullets summarized the statements that appellant had purportedly made to Clements, including appellant's opinion that appellee was "dishonest" and had "manipulated financial statements." Appellant made no response when Arminger read through the series of bullets and Arminger considered appellant's silence to be a confirmation that appellant had made the statements at issue.[3] Arminger requested that

---

2. The jurors heard testimony that CATD was responsible for examining "the credentials of the individual to determine whether or not they're qualified to be a dealer and/or operator."

3. Appellant testified that he did not hear Arminger attributing those statements to him, and thought that Arminger had only called to

appellant provide a letter confirming the statements appellant made to Clements, and told appellant that Gohari's approval "would be dependent upon what was contained in the letter."

On December 13, 1996, appellant sent a confirmation letter to CATD. The letter provided in pertinent part:

Mr. Gohari was employed at DARCARS ... through August 12, 1996, as in house controller ... He had responsibility for overseeing day-to day accounting issues and coordinating all accounting issues with ... DARCARS' outside accounting firm.

Mr. Gohari's responsibilities did not include, however, involvement in or supervision over other dealership departments, including New and Used Car Sales, Service and Parts, Leasing, Body Shop, Customer Relations, or Finance and Insurance Programs ...

Unfortunately, Mr. Gohari left his employment in a most unprofessional manner ... As a result, there are many unanswered questions concerning the proper allocation of expenses in the dealership and pay plan applications.

After reviewing information that it had gathered with respect to appellee's application, CATD informed appellee that he would have to nominate a qualified general manager in order to be approved as a dealer. Appellee submitted several names but was unable to procure CATD approval before his contract with Kline expired.

### Procedural History

Appellee filed an amended complaint alleging that appellant had defamed him and tortiously interfered with his contract to purchase the Toyota dealership.[4] Prior to and during the

---

request a written confirmation of what appellant had said to Clements during lunch.

4. Appellee's initial complaint was filed against appellant, Kline, Toyota, CATD, and Clements. The circuit court dismissed the claims against all of the defendants except appellant.

trial, the circuit court made three rulings that are now the subject of this appeal.

First, appellee moved in limine to preclude appellant from asserting a qualified privilege defense. According to appellee, because CATD was not appellee's prospective employer, neither the Maryland Code nor common law afforded appellant a privilege. Appellant argued that the qualified privilege defense was applicable because the communications arose out of the employer-employee relationship. The circuit court ultimately ruled that appellant was not entitled to assert a qualified privilege.

Second, appellant moved to exclude Arminger's memorandum on the ground that it was inadmissable hearsay. Appellee opposed that motion and argued that the memorandum should have been admitted as a business record pursuant to Maryland Rule 5–803(b)(d). Appellee also argued that the bullets contained within the memorandum were admissible under Maryland Rule 5–803(a)(2). The circuit court excluded "the portion referring to Mr. Clements' alleged comments, on the ground that [they were] hearsay," but ultimately allowed Arminger to testify about the bullets he had read to appellant.

Finally, appellee moved to preclude appellant from attempting to prove that the statements attributed to appellant were actually true. Appellee argued that appellant could not prove the truth of those statements because appellant had consistently denied making any defamatory statements. Appellant countered that appellee was required to persuade the jury that the statements were false and that appellant was therefore entitled to introduce evidence that would support a different conclusion. At the motions argument, appellant directed the circuit court to a complaint DARCARS had filed against appellee, alleging that appellee had defrauded the dealership and abused his power by extending interest free loans.

After a six day trial the jury found that appellant made false and defamatory statements and deliberately interfered with appellee's contract. The jury awarded appellee $500,000 in

damages for defamation, and $2,120,000 damages for tortious interference with contract, but declined to award punitive damages.

## Discussion

The circuit court determined that the following statements were at issue:

THE COURT: Bullet 1. "[Appellee] never had operational authority over the dealership even at the time of [appellant's] illness." Are you claiming that to be defamatory?

[APPELLEE'S TRIAL COUNSEL]: Yes, sir.

THE COURT: Okay. "He manipulated financial statement figures to inflate his personal compensation."

[APPELLEE'S TRIAL COUNSEL]: Yes, sir.

THE COURT: "He was dishonest."

[APPELLEE'S TRIAL COUNSEL]: Yes, sir.

\* \* \*

THE COURT: All right. "People did not like him."

[APPELLEE'S TRIAL COUNSEL]: Yes, I think that is because I think that does really go to the heart of being the operator of a dealership. I think it is borderline, . . . it is not something that I am going to spend a lot of time on . . .

■ Appellant contends that whatever statements he made were protected by a qualified privilege, and that appellee was never defamed because each statement attributed to appellant was true.

A party is entitled to have his or her theory of the case presented to the jury, provided that the theory is legally and factually supported. Therefore, provided there is evidentiary support for an instruction requested by a party, the court must instruct the jury on the law, either by giving particular instructions offered by the parties, by crafting its own instructions, or by combining elements of both.

*Baltimore Gas & Electric v. Flippo*, 112 Md.App. 75, 92, 684 A.2d 456 (1996), affd. 348 Md. 680, 705 A.2d 1144 (1998)(inter-

nal citations omitted). We are persuaded that appellant was entitled to assert the qualified privilege defense, and to present evidence that the statements attributed to him were true.

## I.

Under Maryland law, to establish a prima facie case for defamation,

> a plaintiff must ordinarily establish that the defendant made a defamatory statement to a third person; that the defamatory statement was false; that the defendant was legally at fault for making the statement; and that the plaintiff thereby suffered harm.

*Rosenberg v. Helinski*, 328 Md. 664, 675, 616 A.2d 866 (1992), *cert. denied*, 509 U.S. 924, 113 S.Ct. 3041, 125 L.Ed.2d 727 (1993). Even where those elements are satisfied, a defendant will not be liable if "acting 'in furtherance of some interest of social importance, which is entitled to protection . . .' " *Woodruff v. Trepel*, 125 Md.App. 381, 391, 725 A.2d 612 (1999)(*quoting*, W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 114, at 815 (5th ed.1984)). Conditional or qualified privileges

> rest upon the notion that a defendant may escape liability for an otherwise actionable defamatory statement, if publication of the utterance advances social policies of greater importance than the vindication of a plaintiff's reputational interest . . . [T]he common law recognized that a person ought to be shielded against civil liability for defamation where, in good faith, he publishes a statement in the furtherance of his own legitimate interest, or those shared in common with the recipient or third parties . . .

*Marchesi v. Franchino*, 283 Md. 131, 135, 387 A.2d 1129 (1978)(internal citations omitted).

Communications arising "out of the employer-employee relationship clearly enjoy a qualified privilege." *McDermott v. Hughley*, 317 Md. 12, 28, 561 A.2d 1038 (1989). That privilege is set forth in Maryland Code (1998 Repl.Vol.), Cts. & Jud. Proc. § 5–423, which provides in pertinent part:

(a) *Liability of employer.*—An employer acting in good faith may not be held liable for disclosing any information about the job performance or the reason for termination of employment of an employee or former employee of the employer: (1) To a prospective employer of the employee or former employee at the request of the prospective employer, the employee, or the former employee ...

Because CATD is a prospective franchisor and not a prospective employer, appellant's statements do not fall within the letter of this statutory protection. This statute, however, did not abrogate the common law, and appellant asserts that the circuit court should have found that his statements were protected by the common law. We agree.

According to the Restatement (Second) of Torts § 595(1), a qualified privilege may be claimed where the defendant believes "there is information that affects a sufficiently important interest of the recipient," and where the publication may be made "within the generally accepted standards of decent conduct." It is obvious that appellee's ability to operate in a franchise was of importance to CATD. One factor to be considered in determining whether the publication falls within the standards of decent conduct is whether the publication was made "in response to a request." *Id.* at § 595(2). In this case, appellee expressly authorized CATD to seek information about his "character, general reputation and credit history" and to "obtain and share information from and with any of its affiliated entities." Pursuant to that grant of authority, CATD approached appellant and solicited information about appellee. Because appellant's offending publication was made "in response to an [authorized] inquiry and not volunteered," we are persuaded that he enjoyed "greater latitude about what he may say about [appellee] without incurring liability." *Happy 40, Inc. v. Miller,* 63 Md.App. 24, 35, 491 A.2d 1210 *cert. denied,* 304 Md. 299, 498 A.2d 1185 (1985).

■ Moreover, a qualified privilege may arise where the speaker and the recipient have a "common interest in the subject matter," including "interests in property, business and

professional dealings." *Hanrahan v. Kelly,* 269 Md. 21, 28, 305 A.2d 151 (1973). The Court of Appeals has "recognized that qualified privilege arising by reason of common interest in the subject matter can inhere in business dealings between the publisher and the recipient." *Id.* n. 2 (citing *Deckelman v. Lake,* 149 Md. 533, 131 A. 762 (1926)). When a franchisor asks one of its franchisees about a former employee,

> "the circumstances are such as to lead ... persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know."

*Id.* (quoting Restatement of Torts § 596 (1938)).

Based on 1) appellee's express consent authorizing CATD to solicit information from appellant and 2) the business relationship between CATD-franchisor, and appellant-franchisee, we hold the circuit court erred in concluding that appellant was not entitled to a qualified privilege. *See Jacron Sales Co. v. Sindorf,* 276 Md. 580, 600, 350 A.2d 688 (1976)(The question of whether a defamatory statement is entitled to a qualified privilege is a question of law for the circuit court).

 We do not overlook appellant's potential competitive interest in "destroying [appellee's] chances of acquiring a Toyota dealership." That interest, however, is not grounds for prohibiting a qualified privilege, and appellee

> "has the right notwithstanding the privileged character of the communication to go to the jury, if there be evidence tending to show actual malice, as where the words unreasonably impute crime, or the occasion of their utterance is such as to indicate, by its unnecessary publicity or otherwise, a purpose wrongfully to defame the plaintiff.... Or, malice may be established by showing that the publication contained matter not relevant to the occasion.... Expressions in excess of what the occasion warrants do not *per se* take away the privilege, but such evidence may be excess of malice...."

*Hanrahan,* 269 Md. at 29, 305 A.2d 151 (quoting *Fresh v. Cutter,* 73 Md. 87, 93–94, 20 A. 774 (1890)); *Shapiro v.*

*Massengill,* 105 Md.App. 743, 777–78 n. 11, 661 A.2d 202 (1995). Appellant has defamed appellee if:

> (1) the publication [was] made with malice, that is, with "knowledge of falsity or reckless disregard for truth ...", *Marchesi v. Franchino,* 283 Md. at 139, 387 A.2d 1129. Restatement of Torts 2d § 600–602; (2) the statement was not made in furtherance of the interest for which the privilege exists, Restatement of Torts 2d § 603; (3) the statement is made to a third person other than one "whose hearing is reasonably believed to be necessary or useful to the protection of the interest ...", *General Motors Corp. v. Piskor,* 277 Md. 165, 173, 352 A.2d 810, (1976); Restatement of Torts 2d § 604; and (4) the statement includes defamatory matter not reasonably believed to be in line with the purpose for which the privilege was granted. Restatement of Torts 2d § 605.

*Mareck v. Johns Hopkins Univ.,* 60 Md.App. 217, 225, 482 A.2d 17 (1984), *cert. denied,* 302 Md. 288, 487 A.2d 292 (1985). Upon remand, the circuit court's jury instructions must conform to the elements of proof required to overcome appellant's qualified privilege to utter the statements attributed to him.

## II.

 Appellant asserts that Arminger's statements were inadmissible hearsay. Maryland, however,

> has long recognized so called "tacit admissions" by a party-opponent in both civil and criminal actions as an exception to the hearsay rule under common law ... This common law was codified as Maryland Rule 5–803(a)(2) which took effect on July 1, 1994.

*Key–El v. State,* 349 Md. 811, 816, 709 A.2d 1305 (1998)(internal citations omitted). Rule 5–803(a)(2) permits the admission of a statement made to or about a party who "has manifested an adoption or belief in its truth." A tacit or adoptive admission

occurs when one remains silent in the face of an accusation that, if untrue, would naturally rouse the accused to speak in his or her defense.

*Henry v. State,* 324 Md. 204, 241, 596 A.2d 1024 (1991).

As a threshold question for the trial court, the admissibility of such silence should depend on an evaluation of the required prerequisites for the use of the tacit admission that have been established over the years by this Court, i.e., did the defendant hear and understand the other party's statement, did the defendant have the opportunity to respond; and under the circumstances would a reasonable person in the defendant's position, who disagreed with the statement, have voiced that disagreement. These same factors would then be evaluated by the jury and the tacit admission given the weight that the jury believes it to be worth.

*Key–El,* 349 Md. at 818–19, 709 A.2d 1305. The circuit court concluded that the evidence was sufficient to support a finding that appellant had heard the statements at issue.[5] Appellant asserts that the circuit court committed error, however, because

a 'reasonable person' in Darvish's position—even if he *had* heard and understood the statements—would *not* have felt compelled to 'voice [ ] his disagreement' with Arminger's

---

5. Appellant testified that he had interrupted a meeting in order return a call from Arminger. Appellant admitted that he heard, understood, and remembered various details from the telephone call, including the fact that Clements was going out of town. Appellant heard and complied with Arminger's request that he produce a written confirmation of comments he had made during the December 10 meeting with Clements. Appellant denies, however, that he heard Arminger read "bulleted items" summarizing the details of the December 10 meeting. The circuit court stated:

"Had that been the only testimony I heard on the matter, I might have a different view, I don't know, but I have to take into consideration as well the testimony of Mr. Arminger at his deposition where he said without equivocation that he believed as a result of what he said to the defendant on the telephone that day that the defendant confirmed what was said to him."

paraphrasing of the statements that Arminger reported Clements had purportedly attributed to [appellant].

We disagree and concur with the circuit court's opinion

that a reasonable person under the circumstances, having heard what was said to him, even in rapid fire circumstances, understood the importance of the call with regard to the Toyota actions, understood why he was being called by Mr. Arminger, and understood that there were some concerns that Toyota had about the application of Mr. Gohari, and . . . [that] a reasonable person . . . in this gentleman's position that day listening to the things of that importance about the application on the telephone, if you heard someone say that you said he was dishonest or you said he manipulated funds, that that would have caught his attention or her attention and they would have denied it.

The circuit court expressly stated that its decision to admit Arminger's testimony did not amount to a judicial determination that appellant had adopted the same:

Before we bring the jury in, I just want to clarify so it is clearly understood that what the Court ruled simply was that the testimony was admissible, not that it was conclusive, and of course you are free to rebut in any way you think, including your client testifying that he didn't hear it or whatever.

The jurors were entitled to conclude that a reasonable person would have denied making the statements and thereby assign the "weight" they believed appellant's silence "to be worth." *Key–El*, 349 Md. at 819, 709 A.2d 1305. The circuit court's decision allowing Arminger to testify about the statements at issue was not erroneous. Appellant was entitled to a jury instruction that his silence could not be used against him unless the jurors were persuaded that (1) he heard and understood what Arminger said to him, and (2) if the statements attributed to him by Clements were incorrect, he would have corrected the errors. Appellant was not, however, entitled to the exclusion of that testimony.

## III.

■ Maryland Rule 2–303(c) provides in pertinent part:

A party may set forth two or more statements of a claim or defense alternatively or hypothetically . . . A party may also state as many separate claims as the party has, regardless of consistency and whether based on legal or equitable grounds.

Although appellant denied having published defamatory statements about appellee, he asserted in his answer that even if he had, "any and all" statements were "truthful, privileged and justified." During the hearing on Gohari's motion in limine, appellant's counsel argued as follows:

The only two places in the record where dishonesty—the Court should consider the two together: dishonesty and manipulation of financial statements . . . The only place they appear are in two memoranda: one of Clements and one of Arminger, [appellant] has denied making any statement that Gohari was dishonest or manipulated financial statements.

Arminger and Clements have denied that Darvish ever used the language "dishonest" or "manipulated financial statements."

However, if Mr. Gohari intends to prove the falsity of the statements [appellant] made, it is our position that [appellant] is entitled, because his state of mind is in issue, to rebut or undercut any claim of falsity by showing that indeed there were instances of Mr. Darvish's dishonesty and manipulation of false statements . . .

Appellant's denial that he made defamatory statements does not prevent him from asserting that those statements are substantially correct. Rule 2–303 expressly authorizes a party to plead alternative defenses. It follows that appellant should be able to put on evidence in support of each defense that he asserted. *See Alpar v. Weyerhaeuser Co.*, 20 N.C.App. 340, 201 S.E.2d 503, 506, *cert. denied*, 285 N.C. 85, 203 S.E.2d 57 (1974)(denying defendants right to pursue expressly permitted alternative defenses would place the court "in the incongruous

position of saying that you can plead inconsistent defenses but you cannot prove the same.")

In light of our conclusion that appellant is entitled to a new trial on the qualified privilege issue, it is of no consequence whether appellant did or did not make a proffer necessary to preserve this issue for our review.[6] On remand, appellee will bear the burden of proving that appellant made the statements attributed to him, that those statements were false, and that appellant knew that those statements were false. *Jacron Sales Co. v. Sindorf,* 276 Md. 580, 597, 350 A.2d 688 (1976). Appellant will be permitted the opportunity to prove that the statements attributed to him were true.

JUDGMENT VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.

---

6. When the circuit court granted appellee's motion in limine, it advised appellant's counsel that if "there comes a time at the rebuttal stage you can make an appropriate motion." Appellant made no motion to revisit this issue at the close of appellee's evidence.