## KIM MARCHESI *v.* MARGARET FRANCHINO

[No. 169, September Term, 1977.]

*Decided July 13, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*David H. Feldman, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Glenn W. Bell* and *Robert A. Zarnoch, Assistant Attorneys General,* on the brief, for appellant.

*David B. Mitchell,* with whom was *Michael B. Mitchell* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

We granted certiorari here to reexamine the definition of "malice," as that term is applied to defeat a conditional privilege defense in cases of private defamation. This issue arose in an action for slander brought by appellee against appellant in the Superior Court of Baltimore City. Following removal to the Baltimore City Court, a jury returned a verdict of $500 compensatory and $20,000 punitive damages. The Court of Special Appeals upheld the award in an unreported opinion, *Kim Marchesi, et al. v. Margaret Franchino,* No. 122, September term, 1977, decided December 6, 1977.[1] We now reverse.

In 1971 and 1972, Marchesi and Franchino were employed as probation officers by the Maryland Department of Juvenile Services. During the latter stages of that period, Marchesi informed Rex C. Smith, their supervisor, that Franchino had made homosexual overtures toward her and had also harassed her to the point of causing Marchesi to be concerned for her personal safety. Moreover, she related to Smith, Franchino had admitted to an altercation arising out of a sexual relationship with a female co-worker while previously employed in the State of New Jersey, that episode having

---

1. Appellee also obtained a judgment in a companion libel action against another co-worker, Rex C. Smith, who was at all times relevant to this case the supervisor of the parties here, in the total sum of $10,500—$10,000 punitive and $500 compensatory damages. That judgment, however, was reversed by the Court of Special Appeals for lack of sufficient evidence, a holding which we were not asked to review.

allegedly resulted in a criminal conviction against Franchino. On reporting the entire matter to Smith, Marchesi turned over to him certain notes of a suggestive nature which she had received from Franchino. Claiming that it was Marchesi, not she, who had sought the intimate relationship, Franchino, on being confronted by the allegations, nevertheless did not deny having had a romantic interest in Mrs. Marchesi.

Concerned not only for Marchesi's safety, on the strength of her allegations, but also for the proper administration and discharge of his department's responsibilities, Smith dispatched two other employees to New Jersey to determine whether the report of the prior criminal conviction was accurate. This investigation revealed that Franchino had been arrested on a minor assault charge instituted by a co-worker and, on being convicted, had been fined $25 plus court costs. After receiving this information and interviewing Marchesi and Franchino separately, Smith directed to the State Medical Adviser a written summary of these various developments together with a request that Franchino receive an appropriate medical examination, including the possibility of "psychiatric consultation." Marchesi was subsequently transferred at her own request to another office of the Department in a nearby county. Meanwhile, Franchino, who not only remained at the Baltimore office but was apparently promoted, commenced this action for defamation.

At the conclusion of the evidence at trial, the court submitted to the jury not only the question whether the plaintiff had been falsely defamed, but, having determined as a matter of law that the defendants were protected by a conditional privilege "because of their employee/employer relationship," also instructed the jury to decide whether the defendants had acted with malice.[2] Malice, the court stated,

2. Surprisingly, the court, in its instructions, failed to make any reference to the existence of a privilege or to the plaintiff's burden of proving that this defense had been forfeited by the defendants' malice. Although appellant sought in her certiorari petition to raise this omission as a separate ground for reversal, we declined to include the issue in our writ. Cf. IBEW, Local 1805 v. Mayo, 281 Md. 475, 478-80, 379 A. 2d 1223 (1977), where we deemed it unnecessary to decide whether error had been committed by allowing a jury to determine the existence of a conditional privilege, since, in all events, the jury had found knowing falsity or reckless disregard for truth, the effect of which, therefore, was to overcome any possible privilege.

did not mean "hatred or spite but rather a reckless disregard of truth, the use of unnecessarily abusive language or other circumstances which would support a conclusion that either or both of the defendants acted in an ill-tempered manner or were motivated by ill will." [3] Whether this instruction provided the jury with a proper definition of the malice required to defeat the conditional privilege asserted in the trial court is the dispositive issue on this appeal.

We begin our consideration of the question presented here by recognizing that the disputed instruction was a direct quotation of our statement in *Stevenson v. Baltimore Club,* 250 Md. 482, 486-87, 243 A. 2d 533 (1968), which has since been echoed in several of this Court's opinions. [4] Nevertheless, there are indications in those very same opinions that we implicitly recognized the difficulties inherent in the definition of malice set forth in *Stevenson.* Quoting the *Stevenson* formulation in *Jacron Sales Co. v. Sindorf,* 276 Md. 580, 599-600, 350 A. 2d 688 (1976), we italicized the words "reckless disregard of truth" and to impart further emphasis also added there that "the reckless disregard standard now appears to be firmly established in Maryland as a test, albeit not the exclusive test, for abuse of a conditional privilege." And just this term, in *IBEW, Local 1805 v. Mayo,* 281 Md. 475, 479-81, 379 A. 2d 1223 (1977), we reiterated our preference for a more stringent standard of malice, stating that

---

It would appear appropriate, however, for trial courts, when they determine as a matter of law that a defendant is protected by a conditional privilege, to inform the jury of that ruling, so that the triers of fact may properly understand why it is necessary for them to decide the malice question.

3. Another issue advanced by appellant in her certiorari petition, which we were obliged to reject because it had been abandoned in the Court of Special Appeals, was whether the trial judge's definition of malice, being the only pronouncement of malice in her entire charge to the jury, failed to comport with our holding in Jacron Sales Co. v. Sindorf, 276 Md. 580, 601, 350 A. 2d 688 (1976), that punitive damages may not be awarded in Maryland cases of private defamation absent proof of knowing falsity or reckless disregard for truth. Since we find it necessary to remand this case for a new trial, we may assume that the jury will be instructed properly on the type of malice required to sustain a recovery of punitive damages in defamation cases.

4. *See, e.g.,* IBEW, Local 1805 v. Mayo, *supra,* 281 Md. at 480-81; General Motors Corp. v. Piskor (I), 277 Md. 165, 172, 352 A. 2d 810 (1976); Jacron Sales Co. v. Sindorf, 276 Md. at 599-600; Orrison v. Vance, 262 Md. 285, 295, 277 A. 2d 573 (1971).

"reckless disregard as to truth or falsity is necessary to defeat a qualified privilege." *Accord, General Motors Corp. v. Piskor (I),* 277 Md. 165, 172-73, 352 A. 2d 810 (1976).[5]

Even though our reference to the *Stevenson* definition of malice in recent cases has consistently emphasized reckless disregard of truth as a requirement for defeasance of a conditional privilege, it has now become apparent that still further refinement of the rule is necessary if confusion is to be averted. The need for such clarification is particularly evident in this case, where the trial judge erroneously permitted the jury to render a verdict for punitive damages based solely upon *Stevenson's* less demanding standard of malice, despite our holding in *Jacron Sales Co. v. Sindorf,* 276 Md. at 601, that an award of punitive damages in cases of private defamation cannot be sustained absent proof of knowing falsity or reckless disregard for truth. *See New York Times Co. v. Sullivan,* 376 U. S. 254, 279-80, 84 S. Ct. 710, 11 L.Ed.2d 686 (1964).

The common law conditional privileges rest upon the notion that a defendant may escape liability for an otherwise actionable defamatory statement, if publication of the utterance advances social policies of greater importance than the vindication of a plaintiff's reputational interest. *See Stevenson v. Baltimore Club,* 250 Md. at 486; *and see* Note, *Developments in the Law [of] Defamation,* 69 Harv. L. Rev. 875, 917 (1956); W. Prosser, *Law of Torts* § 114 (4th ed. 1971); *see also Hanrahan v. Kelly,* 269 Md. 21, 28-29, 305 A. 2d 151, 62 A.L.R.3d 1187 (1973); Murnaghan, *Ave Defamation, Atque Vale Libel and Slander,* 6 U. Balt. L. Rev. 27, 42 n.52 (1976). Specifically, the common law recognized that a person ought to be shielded against civil liability for defamation where, in good faith, he publishes a statement in furtherance of his own legitimate interests, or those shared in common with the

---

5. One commentator has gone so far as to conclude that in *Jacron* we not only retained the common law conditional privileges, but actually adopted the test of constitutional malice articulated in New York Times Co. v. Sullivan, 376 U. S. 254, 279-80, 84 S. Ct. 710, 11 L.Ed.2d 686 (1964), as the exclusive standard for defeating the qualified privilege. Comment, *The Maryland Court of Appeals: State Defamation Law in the Wake of Gertz v. Robert Welch, Inc.,* 36 Md. L. Rev. 622, 647 n.161 (1977).

recipient or third parties, or where his declaration would be of interest to the public in general. Were it not for this safeguard, "information that should be given or received would not be communicated because of [the] fear of ... persons capable of giving it that they would be held liable in an action of defamation if their statements were untrue." Restatement (Second) of Torts, Scope Note preceding § 593 (1977). Accordingly, because of the traditional importance of this defense and its retention today in the trial of defamation cases, we believe it desirable here to delineate more precisely the standard of malice required for defeasance of the conditional privilege.

Several reasons argue for a reformulation of the *Stevenson* version of malice. First, the definition itself appears to be a contradiction in terms. While abjuring "hatred or spite" as definitional components of malice, it nevertheless couples "reckless disregard of truth" with "the use of unnecessarily abusive language, or other circumstances which would support a conclusion that the defendant acted in an ill-tempered manner or was *motivated by ill-will.*" *Stevenson v. Baltimore Club,* 250 Md. at 486-87 (emphasis added). Thus, it seeks to harmonize discordant and irreconcilable conceptions of malice by instructing juries to measure that standard, not in terms of "hatred or spite," but by manifestations of "ill-will." As appellant cogently observes, only "a lexicographer could reasonably draw such distinctions."

Wholly apart from the linguistic infirmities inherent in the *Stevenson* definition, "spite" and "ill-will," at least in this context, are but variations of a single theme. As we stated in *Jacron Sales Co. v. Sindorf,* 276 Md. at 599, the terms "express malice" or "actual malice" required to overcome conditional privilege were "variously defined in [earlier] cases as a lack of good faith, *ill-will,* hostility, or *hatred.*" (emphasis added). *See, e.g., Evening News Co. v. Bowie,* 154 Md. 604, 611, 141 A. 416 (1928) (no evidence that publisher of defamatory statement "was moved by any hostility, hatred, or ill will toward the [plaintiff]"). Thus, by its own terms, the malice standard announced in *Stevenson* invites confusion

whenever the defeasibility of a conditional privilege becomes an issue in a defamation case, and perhaps demonstrates why "[t]he word 'malice' . . . has plagued the law of defamation from the beginning." W. Prosser, *supra* § 115.

A second shortcoming in the *Stevenson* definition derives from the obvious incongruity between the ill-will element there and the *New York Times* malice of knowing falsity or reckless disregard for truth, which is the test to be applied for any form of recovery in defamation cases brought by public officials, *New York Times Co. v. Sullivan,* 376 U. S. at 279-80; public figures, *Curtis Publishing Co. v. Butts,* 388 U. S. 130, 155, 87 S. Ct. 1975, 18 L.Ed.2d 1094 (1967); those defamed in labor disputes protected by federal law, *Letter Carriers v. Austin,* 418 U. S. 264, 280-82, 94 S. Ct. 2770, 41 L.Ed.2d 745 (1974); *Linn v. Plant Guard Workers,* 383 U. S. 53, 65, 86 S. Ct. 657, 15 L.Ed.2d 582 (1966); *see IBEW, Local 1805 v. Mayo,* 281 Md. at 479-80; and, under *Jacron Sales Co. v. Sindorf,* 276 Md. at 601, in any case of private defamation, such as this, where either presumed or punitive damages are sought.

To the extent that the *Stevenson* standard encompasses the element of "ill-will," notwithstanding the accompanying disclaimer of hatred or spite, it unquestionably incorporates the common law concept of "actual" or "express" malice. *See, e.g., Evening News Co. v. Bowie,* 154 Md. at 611; *Deckelman v. Lake,* 149 Md. 533, 536, 131 A. 762 (1926); *Bavington v. Robinson,* 124 Md. 85, 90, 91 A. 777 (1914). This species of malice centers on the publisher's wrong state of mind or attitude toward the plaintiff. W. Prosser, *supra,* § 115. It thus differs fundamentally from so-called constitutional or *New York Times* malice which focuses on the element of scienter. Knowing falsity or reckless disregard for truth involves proof of a "high degree of awareness of . . . probable falsity," *Garrison v. Louisiana,* 379 U. S. 64, 74, 85 S. Ct. 209, 13 L.Ed.2d 125 (1964), such that the defendant "entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson,* 390 U. S. 727, 731, 88 S. Ct. 1323, 20 L.Ed.2d 262 (1968).

138

Recognizing the basic distinction between these two conceptions of malice, the Supreme Court has struggled for more than a decade to point out that ill-will or bad motives toward the plaintiff are not elements of the *New York Times* standard. *See, e.g., Letter Carriers v. Austin,* 418 U. S. at 280-82; *Rosenbloom v. Metromedia,* 403 U. S. 29, 52 n.18, 91 S. Ct. 1811, 29 L.Ed.2d 296 (1971); *see also* Eaton, *The American Law of Defamation Through Gertz v. Robert Welch, Inc. and Beyond: An Analytical Primer,* 61 Va. L. Rev. 1349, 1370-73 (1975). In short, common law malice and *New York Times* malice, both of which were embraced within the single definition furnished the jury below, are incompatible legal standards.

Given the demonstrated irreconcilability between the two forms of malice, a further reason is presented for revision of the *Stevenson* test applied at the trial of this case. In stating as a matter of state law in *Jacron* that private plaintiffs in all defamation cases would be subject to the rule announced in *Gertz v. Robert Welch, Inc.,* 418 U. S. 323, 94 S. Ct. 2997, 41 L.Ed.2d 789 (1974), which mandated proof of *New York Times* malice when presumed or punitive damages are sought in certain instances, we recognized the "compelling need for consistency and simplicity in the law of defamation," an area of tort law which traditionally has been noted for its complexity. *Jacron Sales Co. v. Sindorf,* 276 Md. at 593.

Because appellee was required to prove malice for two independent purposes—to recover punitive damages and to overcome the conditional privilege—the need for consistency and simplicity was no less compelling here. If, as we suspect is frequently the case, juries encounter difficulty in applying even a single standard of malice, where only one is applicable, then they cannot help but find the task of coping with two disparate forms vastly more complicated. The solution to this dilemma, we think, lies in the adoption of the *New York Times* standard of malice to defeat the conditional privilege defense in cases of private defamation, thus resulting in a uniform definition of malice to be applied for all purposes where defamatory conduct is charged. In this manner, hopefully, it

will be possible to "avoid the persistent confusion which has been caused by the bi-definitional nature of the phrase 'actual malice.' " Eaton, *supra,* 61 Va. L. Rev. at 1441.

The view we take here finds support in the recent action of the American Law Institute, which, subject to an exception not relevant in this case, adopted in Restatement (Second) of Torts § 600 (1977), "Knowledge of Falsity or Reckless Disregard as to Truth" as the malice necessary to defeat conditional privileges in defamation cases. For the Institute, this represents a significant departure from its former rule that the defendant forfeited his conditional privilege "if he did not believe the statement to be true or did not have reasonable grounds to believe in its truth." *Jacron Sales Co. v. Sindorf,* 276 Md. at 598. The recent shift in the position of the Institute reflects generally an increasing "familiarity with the constitutional standard of reckless disregard, arising from *[New York Times],* and the more frequent use of it in the abuse-of-privilege cases." As a result, "this standard seems to offer a felicitous solution." Restatement (Second) of Torts, Special Note on Conditional Privilege and the Constitutional Requirement of Fault preceding § 593 (1977). With this we agree.

We hold, therefore, that "knowledge of falsity or reckless disregard for truth" is the standard by which the malice required to defeat the conditional privilege defense is to be measured in cases of private defamation. To the extent that our prior decisions are not in accord with this holding, they are disapproved.

Since the jury in the instant case was permitted under the instructions of the trial court to find that the conditional privilege asserted by appellant had been defeated by a form of malice which we have now rejected, there is no alternative but to remand for a new trial, at which, if the same privilege is again found by the court to exist, the jury may be properly instructed on the standard of malice required to defeat that privilege. Because of this disposition, it is unnecessary for us

to reach appellant's secondary contention that appellee failed to produce sufficient evidence of.malice at the former trial.

> *Judgment of the Court of Special Appeals reversed; remanded with instructions to reverse the judgment of the Baltimore City Court and to remand the case to that court for a new trial; appellee to pay costs.*