491 A.2d 1210

**HAPPY 40, INC., et al.**

v.

**Stephanie MILLER.**

**No. 595, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

May 9, 1985.

Daniel J. Moore, Towson (Semmes, Bowen & Semmes, Towson, on the brief), for appellants.

William G. Kemp, Elkton (Thomas L. Kemp and Kemp & Kemp, P.A., Elkton, on the brief), for appellee.

Argued before ROSALYN B. BELL, KARWACKI and ROBERT M. BELL, JJ.

KARWACKI, Judge.

Stephanie Miller, the appellee, brought suit in the Circuit Court for Cecil County against her former employer, Happy 40, Inc. (hereinafter Happy 40), and its president, Richard W. Booher, the appellants. At issue were several statements made by Booher to two other employees of Happy 40 and to the Maryland Employment Security Administration authorities regarding the cause of the appellee's dismissal from her employment with Happy 40. There was also a suggestion in the record that certain statements defaming the appellee had been made to the police by an unidentified employee of Happy 40.

After the appellee presented her case, the appellants declined to offer any evidence whatsoever, but did move for a directed verdict. The trial court denied that motion and submitted the case to the jury, which returned a verdict in favor of the appellee for $25,000 in compensatory damages and $40,000 in punitive damages. After the appellants' Motion for Judgment N.O.V. was denied, they appealed from the trial court's judgment on the jury's verdict.[1]

The appellee was hired by Booher in May of 1979 as assistant manager of Happy 40, a liquor store in Elkton,

---

1. The appellee also asserted claims of wrongful discharge, wrongful interference with contractual relations, and intentional infliction of emotional distress. Prior to trial, the lower court granted the appellants' motion for summary judgment as to the first two of these claims, and after the evidentiary phase of the trial, granted the appellants' motion for directed verdict on the third claim. Because no judgments were entered by the lower court following these actions, we were required to dismiss an earlier appeal from the judgment rendered on the defamation verdict. Former Maryland Rule 605. a. (substantially re-adopted as new Rule 2–602). *Happy 40, Inc. v. Miller,* 57 Md.App. 589, 471 A.2d 333 (1984).

Maryland. She had previously been employed at two other liquor stores in the area as a cashier and later as an assistant manager and, apparently had an unblemished record in these former occupations. She had learned of the opening at Happy 40 through a liquor salesman who recommended her to Booher. After 13 months as assistant manager, she was promoted to the position of manager. Up until the time she was fired from Happy 40, the appellee received no complaints from Booher or any representative of Happy 40 about her job performance.

On January 6, 1982, two officers of the Elkton Police Department arrived at Happy 40 and asked to speak with the appellee in her office. The police explained that the store was plagued by internal theft. They asked the appellee to bring to the police station the next day all of her financial records. On January 7, 1982, the appellee went to the police station as requested where police officers reviewed her records and alluded to a cash register tape in their possession which they said evidenced certain irregularities. The appellee left the police station after being told she would be questioned further and returned to Happy 40. Upon her arrival, she went directly to her office, where she was followed by Booher. The appellee described the ensuing confrontation as follows:

> I walked into my office and Mr. Booher walked in, and he said, "The police just called, and you're fired." And I said, "What did the police say"? He just smiled and said, "Probably the same thing they told you." I was so upset and shocked, I just left.

On January 7, 1982, immediately after the appellee was discharged, Deborah Parker, then a cashier at Happy 40, approached Booher and inquired as to the reason that the appellee had been fired. Parker testified that Booher responded that "he had had evidence that there had been some money missing." Parker asked to see the evidence but Booher stated that it was in the possession of the police. On January 8 or 9, 1982, Jean Hamilton, another cashier at Happy 40, approached Booher and inquired as to the reason

the appellee was fired. Hamilton testified that Booher responded, "The tapes were being fixed, the readings, and that's how she was taking the money."

The appellee filed for unemployment compensation after being discharged. As is its practice, the Maryland Employment Security Administration sent a printed form to Happy 40 requesting information concerning the appellee's termination. Booher on behalf of Happy 40 responded that the appellee was fired for improper job performance and under suspicion of possible misappropriation of funds. That form specifically warns the employer that, "[t]he law provides penalty for false statements." The appellee was granted unemployment compensation, but the appellants did not appeal that decision.

The evidence offered at trial consisted of the testimony of the appellee, her two co-workers who had spoken with Booher about her discharge, and an employee of the Employment Security Administration. The appellee's claim for defamation was premised on three distinct kinds of statements. The first consisted of Booher's conversations with Deborah Parker and Jean Hamilton, co-employees of the appellee, concerning the reason for the appellee's discharge; the second was the information furnished to the Employment Security Administration relevant to the appellee's claim for unemployment compensation after her discharge; and the third consisted of a presumed statement made by an unknown person to the Elkton Police Department regarding the internal theft that was plaguing the Happy 40 store. Booher never took the stand, in his own defense or as an adverse witness. There was no evidence of what Booher knew or did not know when he published his concededly defamatory statements about the appellee.

### Defamation Imputed to Happy 40

The appellee testified that when she was visited by two Elkton Police officers on January 6, 1982, they told her that they were investigating internal theft at the package liquor store she managed. The police officers were not

called as witnesses at the trial, and there was no other evidence offered to establish who reported the alleged internal theft to the police, or what was said, or by what authority the unknown speaker reported the unknown information. Notwithstanding this lack of evidence, the trial court advised the jury that it could be inferred that someone authorized by Happy 40 made a defamatory accusation against the . appellee. In submitting this claim of defamation to the jury the lower court committed reversible error.

In *Metromedia, Inc. v. Hillman,* 285 Md. 161, 172, 400 A.2d 1117 (1979), the Court of Appeals summarized the current law applicable to the burden of proof imposed upon the plaintiff in a private defamation case. The elements which must be established to prove actionable defamation were there stated as:

(1) a false and defamatory communication

　a—which the maker knows is false and knows that it defames the other, or

　b—that the maker has acted in reckless disregard of these matters, or

　c—that the maker has acted negligently in failing to ascertain them, and

(2) that the statement was one which appears on its face to be defamatory, as, e.g., a statement that one is a thief, or the explicit extrinsic facts and innuendo which make the statement defamatory, and

(3) allegations of damages with some particularity, since *Gertz*[2] and *Jacron*[3] forbid presumed damages.

In this instance the appellee failed to offer evidence which proved who if anyone published the unknown statement, what or whom the unknown statement concerned, what facts it was predicated upon, or the authority of the publish-

----

**2.** *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

**3.** *Jacron Sales Co. v. Sindorf,* 276 Md. 580, 350 A.2d 688 (1976).

er to act on behalf of Happy 40. Therefore, the required burden of proof was not met. *Leach v. Penn-Mar Merchants Ass'n,* 18 Md.App. 603, 308 A.2d 446, *cert. denied,* 269 Md. 761 (1973).

## Defamation Published by Booher

As we noted earlier, the defamatory statements attributable to Booher were issued in two distinct contexts—in response to inquiries by co-employees of the appellee and in response to an inquiry by the Employment Security Administration which was evaluating the appellee's claim for unemployment compensation following her discharge. The issues presented by these statements have been narrowed by the appellants' concession that the appellee sufficiently proved their defamatory nature.

Our task is further simplified by the fact that the trial court specifically ruled, as a matter of law, that all of these defamatory statements were conditionally privileged. The conditional privilege accorded the defamatory remarks published to the fellow employees of the appellee was grounded upon the well settled privilege accorded to statements made within the context of the employer-employee relationship. *General Motors Corp. v. Piskor,* 277 Md. 165, 352 A.2d 810 (1976); *Jacron Sales Co. v. Sindorf,* 276 Md. 580, 350 A.2d 688 (1976); *Hanrahan v. Kelly,* 269 Md. 21, 305 A.2d 151 (1973); *Peurifoy v. Congressional Motors, Inc.,* 254 Md. 501, 255 A.2d 332 (1969); *Stevenson v. Baltimore Baseball Club, Inc.,* 250 Md. 482, 243 A.2d 533 (1968). On the other hand, the privilege accorded Booher's defamatory response to the inquiry of the Employment Security Administration was grounded in legislative enactment [4] as well as in com-

---

4. Maryland Code (1957, 1979 Repl.Vol.), Article 95A, § 12(g)(2), in providing a statutory privilege for communications made with regard to applications for unemployment compensation states:

No report, communication or any other such matter either oral or written from the employee or employer to each other or to the Executive Director or Board of Appeals or any of their agents, representatives or employees, which shall have been written, sent,

mon law concepts which protect a person when he publishes
a statement in good faith and in furtherance of an interest
in protecting his own property, or in sharing information
with a recipient who justifiably is entitled to receive it.
*Marchesi v. Franchino*, 283 Md. 131, 135–36, 387 A.2d 1129
(1978); *Hanrahan v. Kelly*, 269 Md. at 29, 305 A.2d 151;
*Mareck v. Johns Hopkins University*, 60 Md.App. 217, 224,
482 A.2d 17 (1984).

The appellee has filed no cross appeal challenging the
lower court's conclusion that these defamatory publications
were qualifiedly privileged, nor has she disputed the propri-
ety of these rulings in her brief. Therefore, we shall focus
on the issue of whether there was legally sufficient evi-
dence of any abuse of the qualified privileges under which
these statements were uttered by Booher.

In *Mareck v. Johns Hopkins Univ.*, 60 Md.App. at 225,
482 A.2d 17, this Court noted that a qualified privilege may
be lost by abuse, and a publisher subjected to liability if:

> (1) the publication is made with malice, that is, with
> "knowledge of falsity or reckless disregard for truth
> ...", *Marchesi v. Franchino*, 283 Md. at 139, 387 A.2d
> 1129. Restatement of Torts 2d § 600–602; (2) the state-
> ment was not made in furtherance of the interest for
> which the privilege exists, Restatement of Torts 2d § 603;
> (3) the statement is made to a third person other than one
> "whose hearing is reasonably believed to be necessary or
> useful to the protection of the interest ...", *General
> Motors Corp. v. Piskor*, 277 Md. 165, 173, 352 A.2d 810
> (1976); Restatement of Torts 2d § 604; and (4) the state-
> ment includes defamatory matter not reasonably believed
> to be in line with the purpose for which the privilege was
> granted. Restatement of Torts 2d § 605.

---

delivered or made in connection with the requirements and admin-
istration of this article shall be made the subject matter or basis of
any suit for slander or libel in any court, unless such report,
communication, or other such matter is false and malicious.

In her brief, the appellee points to the following twelve evidentiary items from which she argues Booher's abuse of these qualified privileges can be inferred. Paraphrased, they are:

1. The appellee had an "impeccable" work record at Happy 40 and the two prior liquor stores where she worked.

2. The appellee had a *reputation* as a hard working, conscientious and honest person as evidenced by her promotions and the recommendations received from the liquor salesman.

3. The appellee started at Happy 40 as an assistant manager and within 13 months was manager of the entire operation with her own office and a salary increase; and until the day she was fired, not one complaint was voiced by Booher.

4. The appellee handled and had access to large sums of cash up until the day she was fired.

5. When the appellee was fired, Booher did not state his reasons or give the appellee an opportunity to respond to any accusations.

6. The appellee's co-workers were shocked and amazed upon learning of the appellee's discharge.

7. Since the appellee was an employee "at will," there was no reason to assign a stigmatizing reason for her discharge.

8. The appellee underwent questioning by the police "where she was threatened [and] unsuccessful efforts were made to induce a confession. She cooperated completely and the police never again contacted her."

9. There was no evidence that Booher ever checked back with the police to determine the outcome of their investigation; nor was there any evidence of criminal charges being brought against the appellee.

10. The appellants offered no evidence to support the reasons Booher gave the Employment Security Ad-

ministration for firing the appellee, and the appellants failed to appeal the decision to allow the appellee's claim for benefits.

11. The appellants' "attempt at cross-examination to smear or convict by implication or suggestion was soundly rebutted by [the appellee's] direct, precise, accurate and unhesitating testimony."

12. The appellants did not offer any evidence that the appellee had in fact misappropriated or embezzled funds.

■■■ We shall deal with these items in three groups, in reverse order. With regard to items 8 through 12 the appellee has lost sight of the fact that she had the burden of proving each and every element of her cause of action. The appellants' silence could not be considered substantive proof of any of those elements, *Larsen v. Romeo*, 254 Md. 220, 229, 255 A.2d 387 (1969); *Maszczenski v. Myers*, 212 Md. 346, 129 A.2d 109 (1957), nor could the decision by state officials to award her unemployment compensation and not to prosecute her provide a permissible inference of the appellants' knowledge of or reckless indifference toward the appellee's innocence.

■■■ Although it is far from clear, item 7 can be interpreted as a claim under § 605 of the Restatement (Second) of Torts (1977) which states: "One who upon an occasion giving rise to a conditional privilege publishes defamatory matter concerning another, abuses the privilege if he does not reasonably believe the matter to be necessary to accomplish the purpose for which the privilege is given." Item 7, under the facts of this case, is an insufficient basis for the jury to find an abuse of the privilege. We recognize that, "[w]hether a defamatory statement is entitled to a qualified privilege is a question of law for the court, but whether that qualified privilege has been abused is generally a question of fact for the jury." *Mareck v. Johns Hopkins Univ.*, 60 Md.App. at 227, 482 A.2d 17. *See also Sherrard v. Hull*, 53 Md.App. 553, 581–82, 456 A.2d 59, *aff'd. and opinion*

*adopted,* 296 Md. 189, 460 A.2d 601 (1983); *Jump v. Barnes,* 139 Md. 101, 109, 114 A. 734 (1921). Nevertheless, where the defamatory publication is, as in the case *sub judice,* in response to an inquiry and not volunteered, the defendant is afforded greater latitude in what he may say about the plaintiff without incurring liability. *Stevenson v. Baltimore Baseball Club, Inc.,* 250 Md. at 487, 243 A.2d 533; *Fresh v. Cutter,* 73 Md. 87, 92, 20 A. 774 (1890); *Beeler v. Jackson,* 64 Md. 589, 593, 2 A. 916 (1886). And the courts have frequently found a complete lack of evidence of abuse of the qualified privilege accorded communications within the employer-employee relationship in cases involving comments made by an employer about its former employee: *Peurifoy v. Congressional Motors, supra; Stevenson v. Baltimore Baseball Club, Inc., supra; Southwestern Bell Telephone Co. v. Dixon,* 575 S.W.2d 596, 602 (Tex.Civ.App.1979), *writ dismissed,* 607 S.W.2d 240 (Tex. 1980); *Zuschek v. Whitmoyer Laboratories, Inc.,* 430 F.Supp. 1163, 1165 (E.D.Pa.1977), *affirmed,* 571 F.2d 573 (3rd Cir.1978); *Rogozinski v. Airstream By Angell,* 152 N.J.Super. 133, 377 A.2d 807, 818, *opinion adopted with minor modification,* 164 N.J.Super. 465, 397 A.2d 334 (1979); *McBride v. Sears Roebuck & Co.,* 306 Minn. 93, 235 N.W.2d 371, 374 (1975); *Richardson v. Grand Central Corp.,* 572 P.2d 395, 397 (Utah 1977); *Casale v. Dooner Laboratories, Inc.,* 503 F.2d 303, 307 (4th Cir.1973); *Myers v. Spohnholtz,* 11 Ill.App.3d 560, 297 N.E.2d 183, 189 (1973); *Mahona-Jojanto, Inc., N.S.L. v. Bank of New Mexico,* 79 N.M. 293, 442 P.2d 783, 786 (1968); *Murphy v. Johns-Manville Products Corp.,* 45 N.J.Super. 478, 133 A.2d 34, 43 (1957); *Combes v. Montgomery Ward & Co.,* 119 Utah 407, 228 P.2d 272, 277 (1951).

In the instant case, there is no evidence from which a jury could reasonably find that Booher did anything but answer the questions posed to him in a reasonable manner. He fired the appellee because he suspected her of stealing. The conditional privilege that all parties agreed existed in this case was clearly for the purpose of permitting Booher

to explain to his remaining employees the reason for the appellee's discharge. If he were not permitted to tell them his reasons, he would run the risk of appearing arbitrary and capricious. This would affect the remaining employee's morale and sense of security and such a situation would not be in the best interests of the appellants. There was no evidence that Booher used "The occasion as an opportunity to wreak his ill-will upon the [appellee], to abuse and villify [her], and to injure [her] in the estimation of [her] neighbors." *Beeler v. Jackson,* 64 Md. at 593, 2 A. 916. The answers to the questions of both employees and the Employment Security Administration authorities were unquestionably in line with the purpose for which the privilege was granted. Restatement (Second) of Torts § 605. We, therefore, hold that although the appellee was an employee "at will" and Booher had no obligation to disclose the reason for her discharge to her co-employees, to do so in order to protect his lawful interests does not constitute an abuse of the conditional privilege.

■ The remaining items of evidence relied on by the appellee as evidence of an abuse of the qualified privilege (items 1 through 6 above) raise one straightforward question: May knowing falsity or reckless disregard of the truth be inferred from the fact that an employer discharges an employee on suspicion of theft, without confronting the employee with the basis for his suspicion, where that employee had an unblemished record of honesty and good work performance? We conclude that the answer to this query is in the negative.

In *Marchesi v. Franchino, supra,* the Court of Appeals reexamined the plaintiff's burden of proof in private defamation cases when the plaintiff is seeking to defeat a qualified privilege accorded the publisher on the ground that the publication was made with malice. The Court there held that "knowledge of falsity or reckless disregard for truth" was the proper standard by which such malice must be proven. In rejecting common law concepts of

malice, embodying elements of ill-tempered manner or motives of ill will on the part of the publisher, in favor of the standard promulgated in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) the Court noted:

> This species of malice [common law malice] centers on the publisher's wrong state of mind or attitude toward the plaintiff. W. Prosser [Law of Torts, § 115 (4th ed. 1971)]. It thus differs fundamentally from so-called constitutional or *New York Times* malice which focuses on the element of scienter. Knowing falsity or reckless disregard for truth involves proof of a "high degree of awareness of ... probable falsity," *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209 [215], 13 L.Ed.2d 125 (1964), such that the defendant "entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323 [1325], 20 L.Ed.2d 262 (1968).

■ The appellee's difficulty in the case *sub judice* is that the record below contains *no evidence of scienter* on the part of Booher when he published the statements defamatory of the appellee. As we noted earlier, Booher was not interrogated at trial as to the basis for his belief that the appellee was stealing money from receipts of the business of Happy 40. The police officers who investigated the internal theft plaguing the Happy 40 enterprise were not called to testify as to any information furnished them by Booher. In sum, the record is devoid of any evidence regarding what Booher knew when he published the defamation of which the appellee complains. Consequently, the jury was presented with no legally sufficient basis for an evaluation of whether or not Booher spoke with knowing falsity or in reckless disregard for the truth.

■ In *Mareck v. Johns Hopkins Univ., supra*, this Court recently reversed a directed verdict for the defendant whose defamation of the plaintiff was made under a qualified privilege. That case, however, is clearly distinguish-

able from the instant appeal. There, the defendant's agent was called as a witness and actually testified as to what he knew at the time the defamation was published. We held that given the evidence of what the defendant's agent knew and failed to do to corroborate his beliefs, the plaintiff had offered sufficient evidence from which abuse of his qualified privilege could be inferred. In the case *sub judice*, on the other hand, we know that Booher chose not to confront the appellee with the evidence against her, but we have no knowledge of what other steps Booher took or did not take to verify his belief. Though it may be good business practice to confront an employee suspected of theft or other misconduct with the evidence, failure to do so, without more, is simply not sufficient evidence of abuse of the qualified privilege to warrant submitting that issue to the jury. *Roberts v. Dover*, 525 F.Supp. 987 (M.D.Tenn.1981); *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 56–57, 91 S.Ct. 1811, 1826, 29 L.Ed.2d 296 (1971), *overruled on other grounds, Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), (mere failure to confront the plaintiff with the defamatory material is not sufficient evidence of actual malice).

JUDGMENT REVERSED;
COSTS TO BE PAID BY THE APPELLEE.