**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT S. DOBKIN,
<u>Plaintiff-Appellant,</u>

and

DONALD ERWIN DOBKIN; ROSALYN
DOBKIN,
<u>Parties in Interest,</u>

v.

JOHNS HOPKINS UNIVERSITY; PEARL
GERMAN, Individually and as
Professor and Program Director of
the Interdepartmental Program in
Gerontology; ESTELLE A. FISHBEIN,
Individually and as Vice President;

JUDITH KASPER, Individually and as
Associate Professor,
<u>Defendants-Appellees,</u>

and

JOHNS HOPKINS UNIVERSITY
SCHOOL OF HYGIENE AND PUBLIC
HEALTH; DEBRA ROTER, Individually
and as Associate Professor; DIANE
ROWLAND, Individually and as
Assistant Professor; NATIONAL
INSTITUTES OF HEALTH; THE NATIONAL
INSTITUTE ON AGING; RANDY
FISHBEIN,
<u>Defendants.</u>

No. 96-1715

ESTELLE A. FISHBEIN; PEARL GERMAN,
Plaintiffs-Appellees,

and

JOHNS HOPKINS UNIVERSITY,
Plaintiff,                                                    No. 96-1716

v.

ROBERT S. DOBKIN; DONALD ERWIN
DOBKIN; ROSALYN DOBKIN,
Defendants-Appellants.

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
John R. Hargrove, Senior District Judge.
(CA-93-2228-HAR, CA-94-2656-HAR, CA-95-813-HAR)

Argued: June 4, 1997

Decided: January 21, 1999

Before RUSSELL* and NIEMEYER, Circuit Judges,
and TILLEY, United States District Judge for the
Middle District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.
_____

*Judge Russell heard oral argument in this case but died prior to the
time the decision was filed. The decision is filed by a quorum of the
panel. 28 U.S.C. section 46(d).

2

**COUNSEL**

**ARGUED:** Charles O. Morgan, Jr., San Francisco, California, for Appellant. Jeffrey Peabody Ayres, VENABLE, BAETJER & HOW-ARD, L.L.P., Baltimore, Maryland, for Appellees. **ON BRIEF:** John T. Prisbe, VENABLE, BAETJER & HOWARD, L.L.P., Baltimore, Maryland; Frederick G. Savage, Eileen S. Goldgeier, THE JOHNS HOPKINS UNIVERSITY, Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

After Appellant Robert Dobkin's graduate traineeship grant was terminated at the Johns Hopkins University School of Hygiene and Public Health, Dobkin filed actions against several parties including the University ("JHU"), Dr. Pearl German (head of the traineeship program), and Ms. Estelle Fishbein (Vice President and General Counsel for JHU) alleging defamation, false light invasion of privacy, and breach of contract. Prior to filing the action, Dobkin and his parents wrote a number of letters to influential persons castigating Dr. German and Ms. Fishbein who, after Dobkin filed suit against them, counterclaimed against Dobkin for statements made in the letters he wrote. German and Fishbein also filed a separate action against Mr. Dobkin's parents for assertions made in letters the parents had written.

In Mr. Dobkin's defamation action against JHU, Dr. German, and Ms. Fishbein (HAR 93-2228), the district court granted summary judgment in favor of the defendants. The district court denied Mr. Dobkin's motion for summary judgment on Dr. German's and Ms. Fishbein's defamation counterclaim in Civil Action No. HAR 93-2228 and denied Mr. Dobkin's parents motion for summary judgment

3

in HAR 94-2656. The claims of Dr. German and Ms. Fishbein against Mr. Dobkin and his parents were consolidated for a trial which lasted five days and terminated with verdicts in favor of Dr. German and Ms. Fishbein on each of their respective claims.

Mr. Dobkin appeals the adverse summary judgment rulings and appeals from the jury's verdict. We find no error and affirm, primarily based upon the reasoning of the district court.

I.

In early 1990, Robert Dobkin applied to JHU in order to obtain a Ph.D. in Public Health and a certificate in Gerontology within JHU's Interdepartmental Gerontology Program. He was accepted to the School of Hygiene and Public Health and to the Gerontology Program for the 1990-91 academic year and was awarded a National Institute on Aging/National Institutes of Health traineeship grant in gerontology. Dr. German, a gerontology professor and the traineeship grant director, initially served as Dobkin's advisor but problems eventually developed between them, especially when Dr. German advised Dobkin that he was not ready to take the preliminary departmental oral examination.[1] Disregarding Dr. German's advice, Dobkin located another advisor, stood for the examination and failed.

After the failure, Dobkin's grant was terminated. Rather than pay his own tuition and stay in the doctoral program, Dobkin requested that JHU award him a master's degree based on the work he had already undertaken. Ms. Fishbein, Vice President and General Counsel for JHU, became involved in trying to settle the matter of Dobkin's request which JHU ultimately rejected. Dobkin then took leave from the school and eventually withdrew.

Dobkin alleges that during the settlement discussions and ensuing investigation, Dr. German and Ms. Fishbein made statements which he claims were defamatory.

In HAR 93-2228, Dobkin claimed that Dr. German had accused

_____

[1] The parties dispute who terminated the relationship.

4

him of sexually harassing her when she made statements to others at JHU that Dobkin had once come to her office wearing shorts of such an extremely short length that, when he sat down, a portion of his private anatomy became exposed. He also claimed that Dr. German had falsely accused him of being untruthful about his medical condition to Robin Fox, the Assistant to the Dean of the School of Hygiene and Public Health at JHU. The alleged defamatory statement was then put in a memo which read as follows:

> While at Hopkins, Mr. Dobkin disclosed to a number of people that he had been earlier diagnosed with cancer of the urinary bladder. In the statement of objective section of his application, he states that he was diagnosed with cancer (type not mentioned) in 1983 and was treated at Sloan Kettering. According to Dr. German, Dr. Dan Ford examined Mr. Dobkin at our Student Health Center and mentioned to Dr. German that he (Dr. Ford) thought it unlikely that Mr. Dobkin had ever had bladder cancer because he still had his bladder.[2]

Dobkin claimed that Ms. Fishbein defamed him by suggesting that he was a dangerous person when she stated in a letter to one of Dobkin's own attorneys that the attorney had "a legal duty to warn any person, including Dr. German and myself, if any contact with your client leads to a reasonable belief that he is inclined to commit a violent act against that person." Dobkin also contends that Ms. Fishbein suggested he might be the Unabomber when she remarked to her son that Dobkin had attended two universities where the Unabomber had struck.

Before seeking judicial relief, Dobkin and his parents, Donald and Rosalyn Dobkin, wrote letters to various persons, allegedly to redress the termination of Dobkin's federal traineeship grant. Dobkin sent letters to Dr. Thomas Sowell[3] of the Hoover Institute at Stanford Uni-

_____

[2] Dr. German later wrote in the margin of the memo that Dr. Ford had told her "that it was not clear what type of cancer Mr. Dobkin had since he still had his bladder."

[3] In his letter to Dr. Sowell, Dobkin stated: "I have been annihilated and my research career completely stymied by Johns Hopkins University in a matter involving fraudulent grant administration with the National Institutes of Health." (J.A. at 155-58).

5

versity, Ross Perot,[4] and William Kunstler. Dobkin's parents wrote letters to Hillary Clinton,[5] VicePresident Al Gore,[6] and Senator Robert Dole.[7] As a result of those assertions, JHU, Dr. German and Ms. Fishbein brought defamation actions against Dobkin (HAR 93-2228) and his parents (HAR 94-2656).

II.

A. Dobkin v. Johns Hopkins University
(Appeal No. 96-1715)

Dobkin contends the district court erred in granting summary judgment to the JHU defendants, specifically JHU, Dr. German, and Ms.

_____

[4] In his letter to Mr. Perot, Dobkin stated: "My NIH grant was administered fraudulently by Johns Hopkins, my records were slandered, the NIH now threatens suit against me and refuses to investigate any written allegation of corruption and lies in correspondences and actions by John Hopkins with NIH officials to ruin me." (J.A. at 159-60).

[5] In their letter to Hillary Clinton, Mr. and Mrs. Dobkin stated:

> [o]ur son, a Yale alumnus (M.P.H. 86), has been academically and apparently irremediably destroyed as a "reward" for his hard work, dedication, integrity and scholarship -- the recipient of pre-meditated misconduct, cover-up and fraudulent grant administration at the highest bureaucratic levels of Johns Hopkins University and involving the National Institutes of Health.

(J.A. at 142-49).

[6] In their letter to Vice President Gore, Mr. and Mrs. Dobkin stated:

> Last November (with no response to date), we wrote to Hillary Clinton requesting any possible assistance in a matter concerning waste and misuse of government funding (the National Institutes of Health) and the premeditated academic assassination of our son, Robert Dobkin, and subsequent cover up at the Johns Hopkins University School of Hygiene and Public Health . . . .

(J.A. at 150-53).

[7] Although there was nothing alleged to be defamatory in the letter to Senator Dole, Mr. and Mrs. Dobkin attached copies of the letters to Hillary Clinton and Vice President Gore. See Letter to Senator Dole. (J.A. at 136).

Fishbein. He contends (1) that he established genuine issues of fact that Dr. German and Ms. Fishbein (and thus JHU) defamed him by stating that he exposed himself; committed sexual harassment; was not truthful about the state of his health; was psychologically unstable; and posed a danger to the lives and safety of JHU personnel; (2) that he stated an actionable false light claim; and (3) that he stated an actionable breach of contract claim.

Summary judgment is appropriately granted when a party having the burden of proof on a particular claim is unable either to produce admissible evidence or point in the record to admissible evidence which would be sufficient to support a jury verdict on each element of that claim. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248-49 (1986). In considering the motion, the district court must consider the evidence and reasonable inferences to be drawn from the evidence in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 597-88 (1986). Our review of the district court's finding is de novo. Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1313 (4th Cir. 1993).

To establish defamation in Maryland, a plaintiff must prove "that the defendant made a defamatory statement to a third person; that the statement was false; that the defendant was legally at fault in making the statement; and that the plaintiff thereby suffered harm." Rosenberg v. Helinski, 616 A.2d 866, 871 (Md. 1992), cert. denied, 509 U.S. 924 (1993).**8** "A defamatory statement is one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." Id. (citations omitted). A communication may be conditionally privileged "`when the circumstances induce a correct or reasonable belief that the recipient is one to whom the publisher is under a legal duty to publish the defamatory matter or is a person to whom its publication is otherwise within the generally accepted standards of decent conduct.'" Henthorn v. Western Md. Ry. Co., 174 A.2d 175, 179 (Md. 1961) (citations omitted). However, a conditional privilege can be overcome by a showing of actual mal-

_____

**8** In a diversity action, the law of the forum state applies. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Fortress Re, Inc. v. Central Nat'l Ins. Co., 766 F.2d 163, 165 (4th Cir. 1985).

ice. Marchesi v. Franchino, 387 A.2d 1129, 1133 (Md. 1978). The standard by which malice is to be measured is "`knowledge of falsity or reckless disregard for truth.'" Id. (citation omitted). The district judge found that Dobkin did not contest that Dr. German's alleged statement about Dobkin's genitals becoming exposed was conditionally privileged. However, Dobkin contended that the conditional privilege was defeated because Dr. German uttered the statement, knowing it was false or with a reckless disregard for the truth. Dobkin, however, neither presented nor pointed to evidence that Dr. German had described the incident as sexual harassment or had acted recklessly in describing the incident. The district court properly granted summary judgment since there was insufficient evidence of actual malice to create a jury question.

The second statement Mr. Dobkin contends was defamatory was one made by Dr. German to Robin Fox, the Assistant to the Dean of the School of Hygiene and Public Health at JHU, about the state of Dobkin's health. Later, the statement was put in Dobkin's file. The alleged statement appears in a memo written by Robin Fox and reads as follows:

> While at Hopkins, Mr. Dobkin disclosed to a number of people that he had been earlier diagnosed with cancer of the urinary bladder. In the statement of objective section of his application, he states that he was diagnosed with cancer (type not mentioned) in 1983 and was treated at Sloan Kettering. According to Dr. German, Dr. Dan Ford examined Mr. Dobkin at our Student Health Center and mentioned to Dr. German that he (Dr. Ford) thought it unlikely that Mr. Dobkin had ever had bladder cancer because he still had his bladder.

Some time later, Dr. German wrote in the margin of the memo that Dr. Ford informed her "that it was not clear what type of cancer Mr. Dobkin had since he still had his bladder." The district judge found that the statement was conditionally privileged because Ms. Fox was conducting an investigation of Mr. Dobkin and Dr. German made the statement in response to questioning from Ms. Fox. The district judge also found that Dobkin failed to set forth specific facts indicating Dr. German acted with actual malice. Therefore, the district judge granted

8

summary judgment for Dr. German on Dobkin's claim for defamation. We agree that Dobkin failed to provide or point to evidence sufficient to create a factual issue regarding either conditional privilege or actual malice and, therefore, we find summary judgment on that claim to have been appropriate.

Next, Dobkin contends that Ms. Fishbein's statements to David Frulla, former counsel for Dobkin, that he and his firm had "a legal duty to warn any person, including Dr. German and myself, if any contact with your client leads to a reasonable belief that he is inclined to commit a violent act against that person" was defamatory. Dobkin further claims that Ms. Fishbein's statement to her son, Rand Fishbein, expressly or impliedly stated that Dobkin was dangerous. She allegedly misinformed her son that Dobkin had attended two of the universities where the Unabomber struck. The district court held that the letter to Dobkin's attorney contained the subjective impressions of Ms. Fishbein and her clients. Generally, to be actionable a statement must contain or imply a statement of provable false fact. See e.g., Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1093 (4th Cir. 1993) (stating that "[t]hough opinion per se is not immune from a suit for libel, a statement is not actionable unless it asserts a provably false fact or factual connotation"). The district judge found the letter could not reasonably be interpreted as stating actual facts about Dobkin. As for the statement to her son, the district judge found that the statement about Dobkin attending two of the universities where the Unabomber struck was substantially accurate, therefore, no legal harm was done. See AIDS Counseling & Testing Ctrs. v. Group W Television, Inc., 903 F.2d 1000, 1004 (4th Cir. 1990) (noting that"[i]f the gist or `sting' of a statement is substantially true,`minor inaccuracies will not give rise to a defamation claim'"). Again, we agree with the analysis of the district court.

Dobkin next argues that he did state an actionable false light invasion of privacy claim. To state an actionable false light claim, a plaintiff must show: (1) publicity in a false light which a reasonable person would find highly offensive and (2) that the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter placing plaintiff in a false light. See, Restatement (Second) of Torts § 652E; Bagwell v. Peninsula Reg'l Med. Ctr., 665 A.2d 297 (Md. App. 1995), cert. denied, 669 A.2d 1360 (Md. 1996). As with a defa-

9

mation claim, qualified privileges preclude a false light claim absent a showing of actual malice. See Harnish v. Herald-Mail Co., 286 A.2d 146 (Md. 1972); Restatement (Second) of Torts§ 652G, comment (a). The district court held that, for the same reasons that Dobkin's defamation claims failed, Dobkin's false light claims failed. See AIDS Counseling & Testing Ctrs., 903 F.2d at 1004 n.1 (citing Phillips v. Washington Magazine, Inc., 58 Md. App. 30, 36 n.1, 472 A.2d 98, 101, cert. denied, 300 Md. 89, 475 A.2d 1201 (1984) and stating that the same considerations and legal standards apply to defamation actions and invasions of privacy actions). Additionally, the district court held that Dobkin failed to proffer any evidence demonstrating widespread dissemination as required to state a false light invasion of privacy claim.

As to the contract claim, the district court found that Dobkin did not put forth any evidence raising a genuine issue of fact concerning an express or implied contract with JHU to award Dobkin a M.P.H. degree. We agree with the district court's reasoning on the false light claim and its finding on the contract claim.

B. Fishbein v. Dobkin (Appeal No. 96-1716)

In this case, Dobkin's motion for summary judgment was denied in part and the case went to trial. The Dobkins contend that the trial judge erred by: (1) not instructing the jury that all of the letters were petitions to the government for redress of their grievances which would be conditionally privileged under the Petition Clause of the First Amendment; (2) the letters were constitutionally protected; and (3) the letters were rhetorical hyperbole. Therefore, the Dobkins argue that Dr. German and Ms. Fishbein had to demonstrate actual malice in order to prevail.

The Petition Clause of the First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. Amend. I. However, the right to petition does not provide absolute immunity to those who express libelous and damaging falsehoods. See McDonald v. Smith, 472 U.S. 479, 485 (1985) (stating that "[t]he right to petition is guaranteed; the right to commit libel with impunity is not"). The Supreme Court stated that "there is no sound basis for granting greater constitutional protection to state-

10

ments made in a petition . . . than [in] other First Amendment expressions." Id. The Dobkins are not afforded the greater protection of the actual malice standard simply because they argue the petition clause. Rather, in accordance with other defamatory First Amendment cases, only if Dr. German and Ms. Fishbein qualify as public figures must they prove actual malice. A public figure must show actual malice to recover damages. New York Times Co. v. Sullivan , 376 U.S. 254, 279-80 (1964). Dr. German and Ms. Fishbein are not public figures either for general purposes or limited purposes. There is a two part inquiry to determine whether a person is a limited purpose public figure: first, whether there was a "public controversy" which gave rise to the alleged defamation and second, whether the "nature and extent of [the] individual's participation" in that controversy justifies public figure status. See Gertz v. Robert Welch, Inc. , 418 U.S. 323, 351-52 (1974); Foretich v. Capital Cities/ABC, Inc., 37 F.3d 1541, 1553 (4th Cir. 1994). A "public controversy" has been defined as:

> A public controversy is not simply a matter of interest to the public; it must be a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way . . . [E]ssentially private concerns or disagreements do not become public controversies simply because they attract attention. . . . Rather, a public controversy is a dispute that in fact has received public attention because its ramifications will be felt by persons who are not direct participants.

Foretich, 37 F.3d at 1554 (quoting Waldbaum v. Fairchild Publications, Inc., 627 F.2d 1287, 1296 (D.C. Cir.), cert. denied, 449 U.S. 898 (1980)). The termination of Robert Dobkin's grant is not a "public controversy." Therefore, Dr. German and Ms. Fishbein are not public figures and did not need to prove the Dobkins acted with actual malice. Furthermore, some of the letters at issue were sent to Hillary Clinton, Thomas Sowell, Ross Perot, and William Kunstler. These individuals were not public officials and letters to them would not qualify as petitioning the government.

Next, the Dobkins claim that the trial court abused its discretion by excluding certain evidence. "[D]ecisions regarding the admission and exclusion of evidence are peculiarly within the province of the district

11

court, not to be reversed on appeal absent an abuse of discretion." Martin v. Deiriggi, 985 F.2d 129, 137 (4th Cir. 1992). First, the Dobkins contend the trial court erred by excluding evidence of their state of mind at the time they wrote and published the statements. The Dobkins argue that hearsay evidence should have been admitted, not to prove the truth of the matter asserted, but as state of mind evidence pursuant to Rule 803(3) of the Federal Rules of Evidence. They state the totality of the circumstances is relevant to determine whether the letters were published with actual malice or negligently. However, Dr. German and Ms. Fishbein did not need to prove actual malice.

The Dobkins also cite as error the district court's exclusion of evidence pertaining to Dr. German's statements about the exposure of Mr. Dobkin's private anatomy and Ms. Fishbein's statements about the Unabomber. As stated earlier, a trial judge has wide discretion in admitting and excluding evidence. See Gill v. Rollins Protective Servs. Co., 836 F.2d 194, 198 (4th Cir. 1987) (stating that "the determination of the relevancy of evidence is generally committed to the sound discretion of the trial judge"). The Dobkins have made no showing why the exclusion of that evidence was relevant to an issue being tried before the jury.

We have carefully reviewed other assignments of error and find they do not merit discussion. The judgments of the district court are, in all aspects,

AFFIRMED.

12